# Turner *v.* Flinn *et al.*

*Bill in Equity by Junior Mortgagee for Account, and for Marshalling Securities.*

1. *Answer ; denials in sworn answer by two witnesses.*—A sworn answer, responsive to the charges in the bill, and denying them, is evidence for the defendant, which can be overturned only by the opposing testimony of two witnesses, or one witness with corroborating circumstances.

2. *Senior and junior mortgagees ; breach of agreement between, no ground of equitable jurisdiction.*—When a senior and junior mortgagee, whose mortgages covered, in part, the same property, agreed that if the junior mortgagee would not advertise under his mortgage, the senior mortgagee would, after satisfying his debt, turn over the surplus of the proceeds of the sale of property which was mortgaged to him alone, to the junior mortgagee an action at law would lie for the breach of such an agreement, which furnishes no ground of equitable jurisdiction.

3. *Same ; marshalling assets between.*—When mortgages, held by senior and junior incumbrancers, cover, in part, the same property, and the mortgagor is insolvent and the entire property is insufficient to pay both debts, the junior

may compel the senior mortgagee to exhaust the fund on which he alone held a lien before resorting to that covered by both mortgages.

4. *Same; same.*—While in such a case the senior must do nothing to injure or embarrass the junior incumbrancer, the former is not required to become active ; and where the senior mortgagee had, before the junior mortgagee filed his bill to assert this right, sold all the property covered by both mortgages, the doctrine of marshalling has no application.

APPEAL from Montgomery Chancery Court.

Heard before Hon. H. AUSTILL.

This was a bill in equity filed on November 28, 1877, by Rebecca A. Turner against W. R. Flinn, Henry Jones, James W. Hardie and Julius T. Glaze. The bill alleged that Flinn & Jones were indebted to complainant in the sum of $2,400, which was evidenced by a promissory note, and secured by a mortgage executed on October 18th, 1877 ; that on the 16th day of February, 1877, said Flinn & Jones had executed to James W. Hardie & Co., a firm composed of James W. Hardie and Julius T. Glaze, a mortgage on all the property covered by the mortgage to complainant, and which also covered the crop of cotton and corn grown on a certain plantation described in the bill; that an agreement was made between W. B. Jones, as agent for complainant, and Messrs. Hardie & Co. and Flinn and Jones, as to the sale of the cotton crop, which said agreement is set out in the opinion of the court. The facts of the cause, as well as the pleadings, are stated as fully as is necessary in the opinion of the court. The bill prayed for an account of the mortgage debt of Hardie & Co., and of the credits on it, and also prayed that Hardie & Co. should be compelled to " dispose of the property embraced in their mortgage so as to first apply the proceeds of the property embraced in their mortgage, and not embraced in the mortgage to complainant, or to sell all the property mortgaged to them, and account to complainant for the excess of the proceeds of sale after satisfying their said mortgage and all proper charges." The Chancellor dismissed the bill, and his decree is assigned as error.

R. W. WILLIAMSON, and WATTS & SONS, for appellant. (No brief on file).

GUNTER & BLAKEY, for appellees.—A court of equity has power to marshall assets so that a creditor having two securities shall not wantonly defeat another who has only one of these securities ; but this is done by controlling the action of the mortgagees—directing the mode of the satisfaction of their debts. The court cannot revive, as to the debtor, a debt already extinguished. In this case Hardie & Co. had sold, in good faith, all the property except the cotton, on which

[Turner v. Flinn et al.]

they held a lien; their debt was still unsatisfied, and they were not required, *ex mero motu*, to take any particular course in selling the mortgaged property; they should have been notified or requested to sell in a particular way so as to save complainant's rights. It is too late after a sale, for the law appropriates the proceeds to the payment of the debt for the payment of which the power was exercised, and in this case the parties had themselves appropriated them. There was thus no room for the operation of the doctrine of marshalling securities between creditors.

STONE, J.—One phase of this case rests on an alleged agreement made between Henry Jones, representing Flinn & Jones, the mortgagors, J. W. Hardie for J. W. Hardie & Co., and W. B. Jones, acting as agent of Mrs. Turner, the appellant. The charges of the bill are that Hardie, who had a mortgage on the cotton, agreed with W. B. Jones that if the latter would not advertise under Mrs. Turner's mortgage, he, Hardie, would, after satisfying his own older mortgage, turn over to him for Mrs. Turner any surplus that might remain of the proceeds of the cotton; and that in violation of this agreement, he surrendered to Flinn & Jones twelve bales, the last of the cotton crop produced that year by Flinn & Jones. Mrs. Turner held no mortgage on the cotton, but her mortgage embraced other chattels which were also in the mortgage to Hardie. The bill charges that Henry Jones was present when this agreement was entered into, and assented to its terms. The bill calls for a sworn answer from the defendants, and both Hardie and Henry Jones answer on oath that there was no agreement to turn over to W. B. Jones any cotton, or proceeds of cotton, or any thing else not included in Mrs. Turner's mortgage. Three witnesses are examined—W. B. Jones, Henry Jones, and Hardie. The first named testifies that such agreement was made. The other two testify as they had answered, denying such agreement. This phase of the bill must fail, even if well averred, because the testimony is insufficient, under the rule, to overcome the denials in the answer. A sworn answer, responsive to the charges of the bill, and denying them, is evidence for the defendant, which can be overturned only by the opposing testimony of two witnesses, or *one* with corroborating circumstances.—1 Brick. Dig. 738, § 1466.

But there is another answer to this phase of the bill, equally fatal to the relief it seeks. If Hardie, upon a consideration deemed valuable in the law, made the agreement with Jones which the bill seeks to set up, it was only a simple contract to do an act, for the breach of which an action at law could

be maintained. It does not contain one single ingredient of an equitable jurisdiction.

But it is sought to maintain the present bill, as a suit to have the securities marshalled between the different lien creditors. Hardie & Co. held the elder mortgage, and the debt, to secure which it was given, was past due when the mortgage was made to Mrs. Turner. Each mortgage, to some extent, conveyed the same property, while each conveyed property not embraced in the other. The cotton crop, probably the most valuable of all the chattels conveyed, was mortgaged to Hardie & Co., but not to Mrs. Turner. The mortgagors were insolvent, and the entire property conveyed by the two mortgages was insufficient to pay both debts. In this state of the case there can be no doubt that Mrs. Turner, if she moved in time, had the right to have Hardie first exhaust the fund on which he alone held a lien, so as to leave for Mrs. Turner a larger *residuum* of the property upon which each of them held a lien.—Story Eq. Ju. § 633. But this is an equitable doctrine—the creature of equity—called into exercise by, and for the benefit of the creditor who is to be profited by it. The fully secured creditor has no interest in the question, and is not required, of his own motion, to take any step to advance the interest of the junior incumbrancer. He must do nothing to injure 'or embarrass the junior incumbrancer, but he is not required to become active. Till the junior incumbrancer moves in the matter, the elder may do nothing. The debt to Hardie & Co. become due and in default, long before the cotton crop was gathered and prepared for market. Before the present bill was filed, and while much of the cotton remained ungathered, Hardie & Co. had so far foreclosed their mortgage as to sell all of the property on which they and Mrs. Turner each held a lien, had applied the proceeds, and also the proceeds of the cotton then gathered, as payments on the mortgage debt due from Flinn & Jones to them, and still left a balance of, say $190, due them. When the present bill was filed, all the property mortgaged to Hardie & Co. and afterwards to Mrs. Turner, had thus been sold, and the proceeds appropriated, as payments on the debt to Hardie & Co.; and the mortgage debt to them was thus extinguished, less the said balance of $190. Of the cotton crop, the proceeds had been applied in the same way, except a remnant of twelve bales. On these, as we have seen, Hardie & Co. held a lien, while Mrs. Turner had none. The lien of Hardie & Co. was only for the $190—the *residue* of their debt having been paid. It results from these facts that there was nothing left, on which the doctrine of marshalling could operate. Nothing remained on which Mrs. Turner had

[Cook, Adm'r, v. Cen. R. R. & B'king Co. of Ga. et al.]

a lien, and no two funds were left, which the Chancellor could marshal. He had no power to cancel the payments made to Hardie & Co. on their demand ; and without doing that, there was no fund on which each mortgagee held a lien. The appellant can take nothing by her bill.

Affirmed.