In the Matter of INDEPENDENT TRUCKERS, INC., Debtor.
In the Matter of McMAKEN TRANSPORTATION COMPANY, Debtor.
Nos. B 02021, B 02022.

United States District Court
D. Nebraska.
Nov. 15, 1963.

Milton R. Abrahams, Omaha, Neb., for the bankrupt.

Harold Rock and Einar Viren, Omaha, Neb., for the trustee.

John W. Delehant, Omaha, Neb., for Trailmobile, Inc., and First Federal Savings & Loan Ass'n of Lincoln.

White, Lipp, Simon & Powers, Omaha, Neb., for Fruehauf Trailer Company.

Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for Henry C. Dross, H. Donald Dross and Joseph Randone.

Fremont Meyers, Omaha, Neb., for Neal Tire Co.

David D. Weinberg, Omaha, Neb., for various employees.

Gaines, Spittler, Neely, Otis & Moore, Omaha, Neb., for Industrial Loan & Investment Co. and Leonard W. Begley & Sons, Inc.

Ginsburg, Rosenberg & Ginsburg, Lincoln, Neb., for Commonwealth Company.

Theodore L. Richling, U. S. Atty., Omaha, Neb., for the United States of America.

Morsman, Fike, Sawtell & Davis, Omaha, Neb., for Stock Yards National Bank.

Sebastiano Caporale, Omaha, Neb., for Matthews & Kelly.

Eugene L. Radig, Omaha, Neb., for Yellow Manufacturing Co.

Donald L. Knowles, Douglas County Atty., Omaha, Neb., for Douglas County, Nebraska.

Louis A. Seminara, Omaha, Neb., for Colorado Kenworth Co.

Stern, Harris & Feldman, Omaha, Neb., for G. Howard Johnson.

Swarr, May, Royce, Smith, Andersen & Ross, Omaha, Neb., for Clark Bros. Transfer Co.

Young, Holm, McEachen, Knowles & Hamann, Omaha, Neb., for General Electric Co. and Baker Trucks.

Young, Denenberg & Mullery, Omaha, Neb., for Nutting Truck & Caster Co.

Irving B. Epstein, Omaha, Neb., for Graves Truck Lines.

ROBINSON, Chief Judge.

These matters came on for hearing upon the petitions of the Trustees in Reorganization, who in each case is Mr. Edward G. Garvey, for an order determining the liens and encumbrances and their order of priority upon assets of each of the debtors, which assets have been sold in these proceedings free and clear of liens and encumbrances, the proceeds of the sale having been impressed with all valid liens and encumbrances. It is also being heard upon claims filed by various lien claimants and priority claimants and objections thereto by the Trustees and others.

Mr. Garvey was appointed Trustee in each of the separate proceedings involving Independent Truckers, Inc., No. B 02021, and McMaken Transportation Company, No. B 02022, by order of this Court. He qualified by filing his bond in each case on the 13th day of April, 1961. After notice to creditors, routine hearing was had on the 8th day of June, 1961, upon the retention in office of Edward G.

Garvey as Trustee. No objections to his retention were raised and the Court accordingly continued him in office pursuant to the rules of the Bankruptcy Act.

Each of the debtors filed a petition in reorganization on April 11, 1961. Both debtors are corporations existing under the laws of the State of Nebraska with their principal places of business in Omaha, Nebraska.

On August 12, 1960, McMaken Transportation Company filed an application with the Interstate Commerce Commission seeking authority under Section 5 of the Interstate Commerce Act to acquire control of Independent Truckers, Inc., through purchase of Independent's capital stock. By the same application, Fred McMaken, who controlled McMaken through ownership of all its capital stock, sought authority to acquire control of the properties of Independent through the transaction. McMaken commenced temporary control of Independent on September 1, 1960. McMaken operated as a motor common carrier generally from Sioux City, Iowa, through Omaha, Nebraska, to Wichita, Kansas, and Oklahoma City, Oklahoma. Independent operated as a motor common carrier generally between Chicago, Illinois, through Omaha to Denver, Colorado.

On July 22, 1960, McMaken and Independent entered into a contract subject to grant of final approval of the Interstate Commerce Commission whereby McMaken would acquire all of the 1,319 shares of common stock of Independent from Henry C. Dross and H. Donald Dross in exchange for 300 new shares of McMaken's capital stock. Each of the Drosses was to receive 150 shares. McMaken had 449 shares of common stock then outstanding. While the application before the Interstate Commerce Commission for permanent authority was pending, and during the period while McMaken was exercising temporary control through management of Independent, the petitions for reorganization were filed.

McMaken and Independent were operating under an operating agreement pending approval of permanent authority from the Interstate Commerce Commission. The operating agreement provided generally for the sharing of facilities and personnel. The separate corporate entities were retained and the expenses of the shared facilities and personnel were shared on a negotiated basis, based on a percentage according to proportionate shares of the amount of revenue from operations each corporation produced. Acquisition by McMaken of Independent under permanent authority of the Interstate Commerce Commission was never consummated.

On April 11, 1961, both corporations filed petitions for reorganization under Chapter X of the Bankruptcy Act. The Trustee continued the operation of the businesses at the direction of the Court and explored the possibility of reorganizing the companies. Within four months set by the Court for the presentation of a plan, the Trustee reported that no plan could be effected or agreed upon and recommended that the operating authorities be sold while the corporations were still able to operate. The sale of the operating authorities by the Trustee while the debtors were still in business upheld the value of the authorities. The Court authorized the sale of the authorities at public auction after a hearing on September 8, 1961 upon the Trustee's report that no plan could be effected.

On November 10, 1961, following a hearing and pursuant to orders of this Court, the operating authorities were sold free and clear of liens and encumbrances at public auction subject to final approval of the Interstate Commerce Commission. On September 4, 1962, the sale of the McMaken operating authorities was approved by the Interstate Commerce Commission and the Trustee received $112,000.00 from the purchaser. On August 10, 1962, the sale of the Independent rights was approved and the Trustee received $213,000.00 from the

purchaser. The purchase price has been deposited by the Trustee subject to further order of the Court.

On January 19, 1962, the Trustee of Independent sold real estate belonging to Independent free and clear of liens and encumbrances at a public auction. On April 9, 1962, the Trustee received the purchase price of $205,000.00 and delivered his deed to the purchasers. The Trustee deposited the $205,000.00 subject to further order of the Court.

On April 10, 1962, McMaken and Independent were adjudicated bankrupts pursuant to Section 236(2) of the Act of Congress relating to bankruptcy, 11 U.S.C. § 636(2). In the order adjudicating each of the debtors bankrupt, the Court reserved the right to make provisions for the disbursements of funds paid into the registry by orders of the Court, (a matter not involved in this phase of the proceedings), reserved the right and retained jurisdiction over matters pertaining to the sale of the operating authorities and real estate, reserved full right and jurisdiction to make provisions for the payment of compensation for services rendered and reimbursement for proper costs and expenses incurred in the reorganization proceedings, and referred the proceedings generally to the Referee in Bankruptcy.

On September 2, 1960, McMaken and Independent executed a mortgage note to First Federal Savings and Loan Association of Lincoln, Nebraska, in the face amount of $160,000.00 with interest at 6½% per annum payable in monthly installments of $2,238.00 beginning October 1, 1960, until paid. The note was signed by the corporations, McMaken and Independent, and by Fred M. McMaken, G. Bernice McMaken, H. Donald Dross and Irene R. Dross. On the same date, a real estate mortgage was signed by McMaken and Independent covering one parcel of real estate in Lincoln owned by McMaken for which $10,000 was received and parcels of real estate in Omaha, Nebraska, owned by McMaken for which $30,200.00 was received, and

the real estate of Independent in Omaha for which the $205,000.00 was realized at the sale by this Court.

The First Federal mortgage was recorded on September 8, 1960, in Douglas County where the Omaha real estate was located and on September 6, 1960 in Lancaster County where the Lincoln real estate is located. An assignment of the certificates of public convenience and necessity of Independent, No. MC55874, and of McMaken, No. MC28263 was also made the same day "to secure and provide the payment" of the First Federal notes. The assignment was never recorded nor was notice given to the Interstate Commerce Commission of the assignment.

On September 2, 1960, Independent, by its President, H. Donald Dross, executed an installment promissory note to Henry C. Dross in the principal amount of $59,000.00 with interest at 6½% per annum, payable in monthly installments of $670.00 beginning October 2, 1960. Independent also executed a real estate mortgage covering the same Independent real estate in Omaha. The mortgage recites that it is a second mortgage subject to a first mortgage on the same property held by First Federal Savings and Loan Association of Lincoln. The mortgage was recorded on October 5, 1960, in Douglas County. A stipulation filed in the proceedings by the Estate of Henry C. Dross, the second mortgagee; First Federal Savings and Loan Association first mortgagee; and the Trustee in Bankruptcy for Independent Truckers, Inc.; and Wilbur D. Neal and "other unsecured creditors", stipulates that the installment promissory note to Dross executed on September 2, 1960, was executed in consideration for the cancellation of a note secured by a mortgage on the same property in the principal amount of $37,500.00 dated September 1, 1956 and recorded October 1, 1956, and a note in the principal amount of $25,000 secured by a mortgage recorded on September 17, 1954 in Douglas County. As

of April 11, 1961, it is stipulated there was due on the note of September 2, 1960 $58,297.26 with interest due to April 11, 1961 of $13,037.90, or a total of $72,-335.16. Mr. Henry C. Dross, who appeared in these proceedings, died during the pendency of the proceedings and the Executor of his estate, H. Donald Dross, has appeared on behalf of the estate. Mr. Henry C. Dross owned almost 50% of the stock of Independent and was Chairman of the Board of Directors of Independent. H. Donald Dross owned the remaining stock and was President of Independent.

The Treasurer of ·Douglas County, Nebraska, claims a first priority lien for the 1960 county and state and 1961 city tax which became a lien on January 1, 1961, pursuant to Section 77–209, Reissue Revised Statutes of the State of Nebraska, 1943, totalling $3,820.89 plus allowable interest against the real property of Independent in Omaha which is now represented by the $205,000.00 proceeds.

The Treasurer of Douglas County, Nebraska, claims $233.73 for personal property taxes and costs due for the 1960 County and State and 1961 City taxes becoming a lien on November 1, 1960, against personal property by virtue of Section 77–205, Reissue Revised Statutes of Nebraska, 1943.

The United States of America has filed claims for tax liens and for taxes against Independent and McMaken. The claims are as follows:

## INDEPENDENT

| Tax | Amount Claimed | Date of Assessment |
|---|---|---|
| Withholding and FICA | $42,950.03 plus 6% interest | 2–10–61 |
| Withholding and FICA | $48,182.36 | 5–19–61 |
| Excise | $ 1,280.00 | 5–12–61 |
| Withholding and FICA | $ 4,818.80 | 7–28–61 |
| Excise | $ 256.00 | 7–28–61 |
| Excise | $ 2,895.00 | Sept., 1961 |
| Excise | $ 168.57 | Feb., 1962 |

## McMAKEN

| Tax | Amount Claimed | Date of Assessment |
|---|---|---|
| Withholding and FICA | $ 7,871.31 with interest at 6% | 2–10–61 |
| Withholding and FICA | $43,816.46 | 5–12–61 |
| Excise | $ 1,670.08 | 5–12–61 |
| Excise | $ 450.00 | 5–19–61 |
| Withholding and FICA | $ 4,954.57 | 7–28–61 |
| Excise | $ 455.90 | May, 1961 |
| Excise | $ 4,410.00 | Sept., 1961 |
| Corporation | $ 3,617.33 | |

The United States recorded notice of lien on the Independent property for the sum of $42,950.03 plus interest on April 10, 1961. The United States recorded notice of lien for $22,095.95 against Mc-Maken on April 10, 1961; however, the amount of the claimed lien against Mc-Maken has been reduced by adjustments to $7,871.31 plus interest. The United States claims a tax lien for each of the foregoing amounts. The remainder of the claims are priority claims for taxes or for administrative expenses and will not be dealt with individually in this opinion.

G. Howard Johnson is the payee of the promissory note dated September 1, 1960, in the face amount of $45,957.39 with interest at 5% per annum from September 1, 1960. The note was executed by Independent and is secured by a chattel mortgage recorded on November 8, 1960, covering the certificates of public convenience and necessity of Independent. It has been stipulated by G. Howard Johnson, Edward G. Garvey as Trustee in reorganization of Independent, and Kenneth E. Shreves, Trustee in Bankruptcy of Independent, that the note and mortgage were executed by Independent, that no payments were made upon the indebtedness, that the certificate of public convenience and necessity was sold for $213,000.00, that the note and chattel mortgage were supported by good and sufficient consideration, and to certain other facts not necessary to recite in this opinion.

█ Two mechanic's liens were filed against the Independent real estate in Omaha by Overhead Door Company, Inc. and Dodson Engineering Company. Neither of the mechanic's lien claimants have appeared or presented claims against the proceedings and will be considered as having abandoned their claims.

The Trustees in reorganization and in bankruptcy of both McMaken and Independent have asserted priority claims for administrative expenses incurred in the reorganization and in the ensuing bankruptcy. They make no claim for the expenses of sale or for auctioneer's fees incurred in the reorganization since the property was auctioned in each instance by the Trustee in Reorganization.

The funds considered here as being available for payment of liens are:

| Property | Proceeds |
| --- | --- |
| Independent I. C. C. authority | $213,000.00 |
| McMaken I. C. C. authority | $112,000.00 |
| Independent real estate | $205,000.00 |
| McMaken real estate | $ 40,200.00 |

It has been stipulated by all parties that the proceeds of the loan from First Federal Savings and Loan Association of Lincoln were accounted for by Independent Truckers, Inc. Of the $160,-000.00 loan proceeds, $62,979.71 was paid to the District Director of Internal Revenue for a portion of Independent's 1960 withholding and social security taxes and interest on those taxes. $22,500.00 was paid to the Stockyards National Bank of South Omaha upon a note of Independent; $55,530.26 was paid to Woodmen of the World Insurance Society upon a note secured by a real estate mortgage on the Independent real estate; $1,714.-90 was used for the payment of survey, service charge, and interest; $1,690.00 was paid into an escrow fund to assure payment of future taxes and insurance; $7,143.45 was retained as cash; $3,921.-39 was paid to release a note to T. H. Maenner Company secured by McMaken real estate; and $2,123.91 was cash paid to McMaken; the latter two payments were applied on the indebtedness then due McMaken from Independent.

The Independent real estate was sold pursuant to application filed January 9, 1962, and confirmed on February 26, 1962. On July 6, 1962, the Trustee made application for a hearing to determine the existence, validity and priority of liens and encumbrances. The claimants with valid liens are as follows:

1. The County Treasurer of Douglas County, Nebraska, has a tax lien for $3,-

820.89 for real estate taxes. The County Treasurer of Douglas County filed a claim under and by virtue of Section 77–203 of the Revised Statutes of Nebraska, 1943.

2. First Federal Savings and Loan Association holds a lien from September 6, 1960 in the principal amount of $150,421.51 plus allowable charges and interest after April 11, 1961.

3. The Estate of Henry C. Dross has a lien by reason of a note and mortgage dated September 2, 1960 and recorded on October 5, 1960 in Douglas County, Nebraska, in the principal sum of $59,000.00. The Estate has a lien for $58,297.26, the principal amount due on April 11, 1961, plus accrued interest as of April 11, 1961 of $14,037.90 or a total of $72,335.16 with additional interest after April 11, 1961, at 6½% per annum. The note was executed by H. Donald Dross as President of Independent.

4. The United States has a lien on the premises by virtue of unpaid taxes in the amount of $42,950.03 plus allowable interest.

The Trustees in Bankruptcy and Reorganization claim the entire proceeds of the real estate subject only to Federal and Douglas County tax liens and deny the validity of the other liens; they contend the obligations from which the liens arose were illegal because they were not properly authorized by the Nebraska State Railway Commission or the Interstate Commerce Commission. The same claim is made by Wilbur D. Neal, doing business as Neal Tire Store, on behalf of himself and all other unsecured creditors similarly situated. These claimants and objectors will be overruled. According to this Court's earlier ruling, no authority was required in regard to the issuance of the notes.

The proceeds of the sale of the operating authorities of Independent Truckers, Inc., $213,000.00, are subject to the following liens or encumbrances:

1. The Trustees in reorganization and Bankruptcy for administrative expenses and priority wage claims, which claims are not as yet fully determined.

2. Douglas County, Nebraska, for personal property taxes in the amount of $233.73.

3. G. Howard Johnson for his chattel mortgages in the principal amount of $45,957.39 plus allowable interest at 5% from September 1, 1960.

4. The United States lien for taxes of $43,020.47 with allowable interest after April 11, 1961.

The McMaken real estate proceeds of $40,200.00 being held in the bankruptcy proceeds are subject to the following liens or encumbrances:

1. The claim of the Trustee for auctioneer's fee of 3% and other expenses of sale to be determined by the Referee.

2. Douglas County Treasurer claims for unpaid real estate taxes to be determined by the Referee.

3. The First Federal mortgage, as set forth under the Independent real estate proceeds.

4. The United States lien for taxes in the amount of $7,871.31 plus allowable interest.

5. The remainder to the Trustee of McMaken in bankruptcy for distribution according to the Bankruptcy Act.

The McMaken certificate of public convenience and necessity proceeds of $112,000.00 is subject to the following liens:

1. The United States for its tax lien, as above.

2. The Trustee in Bankruptcy for distribution according to the Bankruptcy Act.

The date of filing the voluntary petition for reorganization on April 11, 1961, is deemed the date for commencement of the bankruptcy proceedings for the purpose of applying the law of the Bankruptcy Act. 11 U.S.C. § 502.

Several areas of the law are involved in the settlement of the claims to the property. The questions presented include the validity of liens claimed, the priority to be accorded to valid liens, the rights of

junior lien claimants to require senior lien claimants to marshal funds which they hold for security, and the allowability of post-bankruptcy interest. No solution presented will satisfy every claimant. Strong equitable considerations are present and tend to displace or disbalance a solution arrived at by pure technical legal considerations. Generally, the questions presented may be categorized into questions of the validity of the claims and the priority of those claims.

Two claims of validity are presented. The Trustees in Reorganization and bankruptcy have raised an objection to the validity of the notes and mortgages held by First Federal Savings and Loan Association, Henry C. Dross and G. Howard Johnson. The Trustee in the Reorganization has contended that the notes were absolutely void under the Nebraska laws requiring approval of certain notes and securities by the Nebraska State Railway Commission, Section 75–704 to 75–713 Revised Statutes of Nebraska 1943. The Trustee of Independent in bankruptcy contends that the mortgages securing the notes were void under § 214 of the Federal Motor Carrier Act, 49 U.S.C. § 314 and 49 U.S.C. § 20a. Since the Court has previously ruled upon this question in its Memorandum Opinion filed January 8, 1963, reported at D.C., 212 F.Supp. 402, and has held in favor of the validity of similar notes and securities in these same proceedings, the Court will now overrule the objections to the validity of those notes based upon its previous opinion.

█ A question is also raised as to the validity of the assignment of the certificates of public convenience and necessity to First Federal Savings and Loan Association. The assignment was concededly never recorded and was an assignment for security purposes. First Federal's position has been that the Laws of Nebraska do not require recordation for validity. The Trustees have contended that recordation was required to make the equitable lien valid as against them. The Court finds as a conclusion of law that the equitable lien created by the assignment was not valid as against the Trustees. Title 11 U.S.C. § 110; Friederich v. Dockery, 8 Cir. 1954, 209 F.2d 677; see also, In re Collins and Kiser Construction Company, S.D.Ia.1962, 204 F.Supp. 42, and In re Rainbo Express, Inc., 7 Cir. 1950, 179 F.2d 1, 15 A.L.R.2d 876.

█ A question related to the validity of claims and priority has been raised by the motion of the Estate of Henry C. Dross to require First Federal to marshal assets. First Federal claims liens, other than the claim of liens on the certificates of public convenience and necessity, against the proceeds of the sale of real estate of Independent in the amount of $205,000.00 and the proceeds of the sale of real esate of McMaken in the amount of $40,200.00. The proceeds of the Mc-Maken sale, $40,200.00 will be diminished by auctioneer's fees and other expenses of sale not yet determined by the Referee in Bankruptcy who is awaiting this Court's determination of the questions presented here. The McMaken proceeds of $40,200.00 were realized by sales conducted during the McMaken bankruptcy proceedings after the adjudication of bankruptcy and reference by this Court.

The Dross Estate, as second mortgagee of the Independent real estate, would require First Federal to realize first from the McMaken real estate proceeds and then from the Independent real estate proceeds. The Dross Estate has no claim against McMaken unless it could require the senior mortgagee, First Federal, to realize first from the McMaken proceeds. First Federal's only concern is that it receive its full principal and interest from the funds it has available to it.

The Trustee in Reorganization has opposed the marshaling of assets. His argument has been that the proceeds of the loan by First Federal benefited Independent, as set forth in the stipulation, and were used to reduce Independent's indebtedness, that is, among other things, to discharge debts due to the United States for taxes, to an existing mortgagee and to McMaken.

Henry C. Dross was the owner of 659 shares of the outstanding stock, and H. Donald Dross held the remaining 660 shares. Dross subordinated his mortgage to the First Federal mortgage when the loan was given. Dross was the Chairman of the Board of Independent. McMaken is not a co-debtor with Independent to Dross. If the Court requires First Federal to realize out of McMaken assets, the Dross Estate will profit at the expense of the creditors of McMaken. McMaken and Independent have at all times retained separate corporate existence and separate stockholders. The contract for exchange of stock was never consummated.

The Court finds that the Dross Estate cannot require First Federal to marshal the assets of McMaken with its Independent assets because both funds are not in the hands of a common debtor of both creditors but are funds of separate entities, not the common debtor of Dross. Cooper Wagon & Buggy Company v. Irvin, 83 Neb. 832, 120 N.W. 430.

Perhaps, the Court could, in the exercise of its equitable powers, allow First Federal to realize out of the McMaken fund. However, there are also junior lienors claiming the McMaken proceeds. Douglas County, Nebraska has claims for real estate taxes. The United States claims a tax lien subject to the First Federal lien. The Trustee has resisted the marshaling on behalf of creditors. Although the United States has not requested marshaling, as the junior lienor on the McMaken proceeds and holding the same relative position as Dross has in relation to the Independent proceeds, it might have requested marshaling.

The Court, weighing the equities of Dross against the junior lienors and creditors of McMaken, is unable to see an equitable reason for requiring a marshaling of assets, especially since Independent received the direct financial benefit of the loan proceeds. The Court has not overlooked the proposed intimate connection of the two corporations nor the fact that McMaken might have gained by a rejuvenation of Independent had

their contemplated association been successfully carried out. These considerations, however, do not change the foregoing existing reasons for denying the marshaling and placing the burden of repaying the indebtedness upon Independent in view of the benefits received by it and the sufficiency of its assets to repay its debt.

The question of whether interest is payable, and in what amount, has been raised. It must be conceded that normally interest would be payable on obligations to the date the lien or the note indebtedness was satisfied by payment and that it would be payable at the contract rate of interest. The intervention of these proceedings on April 11, 1961, however, places each of the parties in a situation where equity requires that certain adjustments be considered.

Until recently, the Trustee was not authorized by the Bankruptcy Act to invest funds held by him in interest bearing accounts. As a result, the funds being held have not been productive. The Court cannot allow the full payment of interest without diminishing the interests of junior lien claimants, priority claimants, and general creditors. While the property from which the funds were realized were in the hands of the Trustee prior to the sale of the assets, the properties were available for productive use, and in fact were used during the operation of the business. After the sale of the assets and during the pendency of these proceedings to determine the rights and priorities of the claimants, no productive use was possible as a practical matter. The determination of liens and their priority is a necessary step and it cannot be said that the assertion of the right to question and examine the liens claimed was undertaken to cause unnecessary delay. Proceedings to determine liens are usually required when property is sold free and clear of liens. The sale and determination were properly undertaken in this matter.

Since the bankruptcy estates, and consequently all the creditors, benefited from the use of the property subject to liens

before the sale, the lien claimants ought to receive interest at the normal contract rate, without penalty interest after default. No interest will be allowed after the date of sale for the reasons given. The date of sale of the Independent real estate will be considered as of April 10, 1962. The date of sale of the operating authority will be considered as of December 18, 1961 for Independent and December 31, 1961 for McMaken. These dates have been chosen as the dates when the Trustee no longer held the properties with the opportunity for productive use.

■■ Having decided that First Federal ought to realize upon its mortgage from the Independent real estate proceeds, the question of priority may most easily be presented by handling each fund separately. The Court finds the following order of priorities as a matter of law:

### THE PROCEEDS OF THE INDEPENDENT REAL ESTATE

1. Douglas County, Nebraska, for real estate taxes with interest to April 10, 1962.

2. First Federal Savings and Loan Association upon its mortgage with interest at 6½% per annum to April 10, 1962.

3. The Estate of Henry C. Dross upon its mortgage with interest to April 10, 1962.

The amounts due under the above liens will consume the entire proceeds. These priorities follow their order according to the priority determined by local law. The United States concedes priority under 26 U.S.C. §§ 6321 and 6323.

### THE PROCEEDS OF THE INDEPENDENT CERTIFICATES OF PUBLIC CONVENIENCE AND NECESSITY

1. The Trustee of Independent for administrative expenses of the reorganization and the bankruptcy and priority wage claims, to be determined.

2. Douglas County, Nebraska for personal property taxes with interest to December 18, 1961.

3. G. Howard Johnson upon his chattel mortgage with interest to December 18, 1961.

4. The United States for its tax lien with interest to December 18, 1961.

The priority of claimants has been settled according to the rationale of the Court of Appeals for the Third Circuit in In re Quaker City Uniform Co., 1956, 238 F.2d 155.

The expenses of administration and certain qualified wage claims assume priority over statutory liens on personal property not accompanied by possession. 11 U.S.C. § 107, sub. c, Section 67, sub. c of the Bankruptcy Act. In this case, the statutory lien is the lien of Douglas County for personal property taxes. The Nebraska Statutes provide that the state, county, or city has a lien for personal property taxes levied by them from November 1 of the year in which they are levied. § 77–205, Nebraska Reissue Revised Statutes 1943. The city of Omaha and Douglas County had a lien upon the personal property of Independent as of November 1, 1960 for unpaid taxes in the amount of $226.22 with costs and interest. The G. Howard Johnson mortgage was not recorded until after November 1, 1960. The Court of Appeals for the Eighth Circuit has held that the personal property tax lien of Douglas County is on a parity with Federal tax liens. Adams v. O'Malley, 8 Cir., 1950, 182 F.2d 925. The records in this Court of the case indicate that, subsequent to the opinion, the county claim received payment prior to the federal claim. In the matter of Empire Contractors, Inc. Bankruptcy, No. B–2–48, In the United States District Court for the District of Nebraska, Omaha Division. This Court also notes that in the above case, the Bankruptcy Court provided for payment of administrative expenses prior to the county and federal claims. The Chattel mortgage has priority over federal tax liens. 26 U.S.C. § 6323.

Proceeds of McMaken real estate and certificates of public convenience and necessity will be transferred to the Trustee

in Bankruptcy subject to the expenses of sale, the Douglas County tax liens, the federal tax lien of $7,871.31 and expenses of administration, as determined by the Referee in Bankruptcy.