VICTOR GRUEN ASSOCIATES, INC., Appellant,

v.

Morris M. GLASS and Hilda Glass, Irving Sulmeyer, Receiver, California Federal Savings and Loan Association, Appellees.

No. 19207.

United States Court of Appeals Ninth Circuit.

Nov. 17, 1964.

Richard D. Dear, Musick, Peeler & Garrett, Los Angeles, Cal., for appellant.

J. Ronald Trost, Quittner, Stutman, Treister & Glatt, Los Angeles, Cal., for appellees Morris M. Glass and Hilda Glass.

Benjamin E. King, Buchalter, Nemer, Fields & Savitch, Los Angeles, Cal., for appellee Irving Sulmeyer, receiver.

Before HAMLEY, KOELSCH and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

In this proceeding under chapter XI of the Bankruptcy Act,[1] the district court affirmed an order of the referee authorizing the sale of Doheny Towers, an apartment house owned by the debtors, and the release of other assets. Victor Gruen Associates, Inc. (Associates) holding a recorded mechanic's lien on the property sold, and claiming that the effect of the referee's order is to deprive it of the right to have the assets of the debtors marshaled, appeals.

On October 10, 1960, a trust deed in the amount of $2,425,000 in favor of California Federal Savings and Loan Association (Cal-Fed), to secure a promissory note in that amount, was recorded against Doheny Towers. This trust deed was reconveyed to the debtors on December 11, 1961, in exchange for a new trust deed in the amount of $2,750,-000 in favor of Cal-Fed, to secure a promissory note in that amount. The latter trust deed was recorded on December 22, 1961. This trust deed ran against Doheny Towers and also three other parcels of real property owned by the debtors, namely the Hacienda Apartments, the debtors' residence on Queensbury Drive, and an unimproved lot on Drury Lane, all situated in Los Angeles County, California.

There were other encumbrances upon all of these properties, some of which were senior to Cal-Fed's 1961 trust deed, and some of which were junior. Associates holds a recorded mechanic's lien against Doheny Towers for the supply of labor in the construction of improvements on this building. In 1962, Associates initiated a state court action to foreclose its mechanic's lien. Cal-Fed is a party to that action, presently pending, in which the priorities as between Associates' lien and Cal-Fed's trust deed is in issue.

The debtors filed petitions for arrangement under Chapter XI, section 322, 11 U.S.C. § 722 (1958), on January 3, 1963. The debtors were then in de-

1. 52 Stat. 905–915 (1938), 11 U.S.C. §§ 701–797.

fault on the promissory note held by Cal-Fed and secured by the 1961 trust deed. After commencement of these proceedings the Yeamans Company, as trustee of the Cal-Fed trust deed, was restrained by the bankruptcy court from proceeding with a foreclosure sale of the properties covered by the trust deed.

On June 21, 1963, the debtors filed an application for orders authorizing the sale of their interest in Doheny Towers, and the issuance of certificates of indebtedness. The plan called for the sale of Doheny Towers and subsequent foreclosure on that property by Cal-Fed. In addition Cal-Fed was to receive title to the personal property located at Doheny Towers, in which property Cal-Fed had no security interest. Cal-Fed was to release from its $2,750,000 trust deed its security on the other three parcels of real property. In the event that the mechanic's liens held by Associates were determined to be prior to Cal-Fed's with respect to Doheny Towers, Associates would be paid in full.

Also under the plan, Title Insurance and Trust Company (Title Insurance), which had guaranteed Cal-Fed's security priority over Associates' liens, agreed to continue this guarantee. In return for this, a certificate of indebtedness would be issued under which Title Insurance would have a lien on certain assets of the estate. The security for the certificate was the proceeds from the sale of Drury Lane and a deed of trust upon the remainder of the properties which had been security for Cal-Fed's $2,750,000 trust deed.

On July 11, 1963, a hearing on the application was held. Associates objected to the application, demanding that the four properties be ordered marshaled under California Civil Code, Sections 2899 and 3433.[2]

The referee refused appellant's request and, on July 26, 1963, entered its order authorizing the sale and approving the certificate of indebtedness. The referee stated in its certificate of review to the district court that the amount which would be realized from a sale of all the four properties would not produce enough for the satisfaction of the indebtedness to Cal-Fed.

The district court, after a hearing, affirmed the order of the referee. The district court held that the referee's order was supported by the evidence and that Cal-Fed would incur a risk of loss

2. Section 2899 reads:

"§ 2899. Marshaling liens

"ORDER OF RESORT TO DIFFERENT FUNDS. Where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in the following order, on the demand of any party interested:

"1. To the things upon which he has an exclusive lien;

"2. To the things which are subject to the fewest subordinate liens;

"3. In like manner inversely to the number of subordinate liens upon the same thing; and,

"4. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had—

"(1) To the things which have not been transferred since the prior lien was created;

"(2) To the things which have been so transferred without a valuable consideration; and,

"(3) To the things which have been so transferred for a valuable consideration in the inverse order of the transfer. (Enacted 1872.)"

Section 3433 reads:

"§ 3433. Marshaling assets

"RELATIVE RIGHTS OF DIFFERENT CREDITORS. Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons. (Enacted 1872.)"

if the doctrine of marshaling were applied.[3] This appeal followed.

All of Associates' arguments on the appeal go to the question of whether the referee should have required Cal-Fed to marshal the debtors' assets.

■ Marshaling of assets is an equitable doctrine which comes into application where there are two or more creditors which seek satisfaction from one debtor and one of the creditors can reach two funds held by the debtor, whereas the other creditor can reach only one of the funds. Equity will, in such a case, require the creditor who can reach both funds, if it can be done without prejudice to him or inequity to third parties, to look first to the fund which cannot be reached by the other creditor. Meyer v. United States, 375 U.S. 233, 236–237, 84 S.Ct. 318, 11 L.Ed.2d 293.

■ A bankruptcy court can invoke the doctrine of marshaling since it applies equitable principles. Textile Banking Co. v. Widener, 4 Cir., 265 F.2d 446, 450; Merchants' and Mechanics' Bank of Columbus, Ga. v. Sewell, 5 Cir., 61 F.2d 814, 816–817. The specifics of the doctrine as set out in California Civil Code, sections 2899 and 3433, govern with regard to bankruptcy proceedings arising in California. This is true since, in bankruptcy proceedings, the validity, nature and effect of liens are governed by the law of the state where the property is situated. In re Knox-Powell-Stockton Co., 9 Cir., 100 F.2d 979, 982; Porter v. Searle, 10 Cir., 228 F.2d 748, 750.

Associates argues that both appellant and Cal-Fed held liens upon the Doheny Towers property; that in addition Cal-Fed held a lien upon other property owned by the debtors; that appellant's lien may be entirely or partly junior to that of Cal-Fed's; and that appellant made a demand on Cal-Fed to proceed first against the properties other than Doheny Towers. These facts, appellant urges, require the application of marshaling pursuant to the above-quoted California statute. Associates concludes that the referee's order allowing the sale of Doheny Towers and a release by Cal-Fed of the remainder of the security which was subject to the trust deed prejudiced appellant because appellant could no longer require Cal-Fed to proceed against the released property.

■ Neither section 2899 nor 3433, quoted in note 2, requires a creditor to marshal the debtors' assets unless this can be done without risk of loss to himself. See In re Bank of Oakley, 131 Cal. App. 203, 209–210, 21 P.2d 164, 167. The burden rested upon Associates to show that this condition could be met. See Johnson v. Wilson, 145 Wash. 515, 518, 261 P. 102, 103.

■ The referee found that a sale of all four parcels covered by Cal-Fed's trust deed, would not produce an amount sufficient to pay in full the obligation due and owing to Cal-Fed on its 1961 promissory note secured by such deed. The district court held that this finding is supported by the evidence. We agree.

While the principal amount of the promissory note was $2,750,000, the amount due thereon was increasing at the rate of $540 a day because of interest. As of February 13, 1964, the total indebtedness due Cal-Fed on this note was $3,131,477. Had Cal-Fed been required to marshal the debtors' assets by looking first to its security, under the $2,750,000 trust deed, on the three properties other than Doheny Towers, it could have realized only from $209,600 to $244,600 therefrom.[4] This means that

3. The sale of Doheny Towers resulted on February 13, 1964, and Cal-Fed foreclosed its deed of trust and is now the owner of that property.

4. Hacienda Apartments—from $110,000 to $135,000 (value ranging from $575,000 to $600,000, less superior encumbrances aggregating $465,000); Queensbury Drive—from $30,900 to $35,900 (value ranging from $45,000 to $50,000, less superior encumbrances aggregating $14,100); Drury Lane—from $68,700 to $73,700. (At the hearing the estimated value of Drury Lane ranged from $110,000 to $115,000, however, two months after the

Cal-Fed would have had to realize from $2,886,877 to $2,921,877 from the fore-closure of Doheny Towers in order to obtain the full $3,131,477 due it on February 13, 1964.

But the estimated value of Doheny Towers was only from $2,600,000 to $2,-800,000. Thus if all of the lower estimates of value proved to be correct, Cal-Fed stood to lose $321,877 by marshaling the debtors' assets, whereas it would have lost $86,877 if all of the higher estimates of value proved to be correct. The evidence, so analyzed, fully supports the referee's finding that a sale of all four parcels would not produce an amount sufficient to pay in full the amount due Cal-Fed under the $2,750,000 promissory note.

But even if the evidence would not support a finding that Cal-Fed would inevitably lose by being required to marshal the debtors' assets,[5] it at least amply supports the finding, to be implied from the referee's findings of fact and certificate of review, that the marshaling of assets would have entailed a "risk" that Cal-Fed would not obtain full payment due it.

■ Either finding requires the conclusion, implicit in the referee's conclusion of law, and concurred in by the district court, that marshaling of assets should not be ordered because it would involve risk of loss to Cal-Fed.[6]

Affirmed.

---

hearing the property was sold for $120,-000. To determine whether marshaling was properly refused, the facts must be viewed as they existed at the time the doctrine was invoked. See Harrington v. Taylor, 176 Cal. 802, 807, 169 P. 690, 692. From the property value superior encumbrances aggregating $41,300 must be subtracted.)

5. Although there is no record support for the contention, Associates urges that Cal-Fed's 1961 trust deed is superior to Associates' in an amount of no more than $2,425,000. That amount together with interest would not exceed $3,029,500.

Even using Associates' figures, and the lower estimates of value on the properties, Cal-Fed could lose $219,900. Using the highest estimates a fund of $15,-

100 would be left after Cal-Fed was satisfied.

6. It is therefore unnecessary to consider two additional arguments advanced by Cal-Fed in support of the order under review: (1) Associates failed to establish that marshaling of assets would not work an injustice to the other persons, namely, the other encumbrances of Hacienda Apartments, Queensbury Drive and Drury Lane; and (2) even if the debtors' assets should have been marshaled, Associates is not entitled to the relief now requested, namely, the sale of the collateral security property and the holding of the proceeds in trust, or the substitution of Associates to the lien Cal-Fed formerly held on the collateral security property.