In re The COMPUTER ROOM, INC., Debtor.

PEOPLES BANK OF TUSCALOOSA, Plaintiff,

v.

The COMPUTER ROOM, INC., debtor; Claude M. Burns, Attorney for debtor; First Alabama Bank of Tuscaloosa, N.A.; Citizens Bank of Northport; and Al L. Vreeland, Trustee, Defendant.

Bankruptcy No. 81–7105.
Adv. No. 81–1417.

United States Bankruptcy Court, N.D. Alabama, W.D.

Nov. 12, 1982.

Randolph M. Fowler, Tuscaloosa, Ala., for plaintiff, Peoples Bank of Tuscaloosa.

Claude M. Burns, Tuscaloosa, Ala., for debtor, The Computer Room, Inc.

Robert P. Reynolds, Tuscaloosa, Ala., for creditor, First Alabama Bank of Tuscaloosa, N.A.

Albert G. Lewis, III, Tuscaloosa, Ala., for creditor, Citizens Bank of Northport.

GEORGE S. WRIGHT, Bankruptcy Judge.

## ORDER OF THE COURT

The issue before the Court is whether the doctrine of marshaling of assets should be invoked.

### I. FINDINGS OF FACT

1. The Computer Room, Inc. filed a Chapter 7 petition on November 25, 1981.

2. On July 1, 1981, the creditor, First Alabama Bank of Tuscaloosa, N.A. (FAB) perfected a general security interest in debtor's accounts receivable, inventory (including tangible personal property) and contract rights (Fund # 1), as security for a debt of $9,842.88.

3. On September 18, 1981, Peoples Bank of Tuscaloosa (Peoples Bank) perfected a security interest in a specific accounts receivable of the debtor (invoice from the State of Alabama Highway Department) (Fund # 2) as security for a loan of $6,807.90. This obligation was guaranteed individually by Jackson Mathews, who was President and a principal stockholder (Fund # 3). The debtor used the loan proceeds from Peoples Bank to purchase computer equipment necessary to complete contract work with the State of Alabama Highway Department.

4. On December 3, 1981, (eight days after petition and before the § 341 meeting) the attorney for the debtor, Claude M.

Burns, Jr., collected the specific accounts receivable from the State of Alabama Highway Department of $9,308.86, and also collected other accounts receivable and other funds of $4,043.67—making a grand total of $13,352.53, and has retained and invested such funds at interest by agreement of the parties.

5. On December 17, 1981, Peoples Bank filed an adversary proceeding to invoke the equitable doctrine of marshaling of assets.

6. Al Vreeland, as Trustee, has inventory in his possession of $29,100.00 cost value.

## II. CONCLUSIONS OF LAW

 The doctrine of marshaling of assets (or the "two funds" doctrine) is applied "when two or more creditors claim against one debtor and the first creditor can reach two properties held by the debtor whereas the second can reach only one." *In re Beacon Distributors, Inc.,* 441 F.2d 547 (1st Cir.1971); *Meyer v. United States,* 375 U.S. 233, 236, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963); *Merchants & Mechanics Bank v. Sewell,* 61 F.2d 814 (5th Cir.1932); *Houston v. Phillips,* 189 F.2d 115 (5th Cir.1951).[1]

The elements of marshaling of assets are:

1. That they are creditors of same debtor.

2. That there are two funds belonging to that debtor, and

3. That one of them alone has right to resort to both funds.[2]

Diagrammatically, the marshaling of assets' doctrine is as set out below:

SURETY OR GUARANTOR [3]

FUND #3 – PROMISE

FUND # 4 – COLLATERAL [4]

COMMON DEBTOR

FUND #1 – SINGLY CHARGED FUND

FUND #2 – DOUBLY CHARGED FUND

SENIOR (OR PARAMOUNT) CREDITOR

JUNIOR (OR SUBORDINATE) CREDITOR [5]

---

1. 53 Am.Jur.2d *Marshaling Assets* §§ 7 et seq. (1970), 55 C.J.S. *Marshaling of Assets and Securities* § 1 et seq. (1978). Cf. Annot. *Doctrine of marshaling assets where two funds covered by paramount lien are subject respectively to subordinate liens in form of different creditors* 76 A.L.R.3d 326 (1977).

2. *Victor Gruen Associates, Inc. v. Glass,* 338 F.2d 826 (9th Cir.1965); *In re A.E.I. Corp.,* 11 B.R. 97, 7 BCD 876, 4 CBC2d 890 (Bkrtcy.E.D. Pa.1981); *Shedoudy v. Beverly Surgical Supply Co.,* 28 U.C.C. Reporting Service 1181, 1183, 100 Cal.App.3d 730; 161 Cal.Rptr. 164 (Cal. App.1980); 53 Am.Jur.2d *Marshaling Assets* § 7 p. 14 (1970); B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 4.3[2] (1980 & Cum.Supp.1982).

DOCTRINE: Senior Creditor must exhaust Fund # 1 (Not Fund # 3 nor Fund # 4) before resorting to Fund # 2 so that Junior Creditor can collect Fund # 2.

### A. History of Doctrine of Marshaling of Assets

*In re Beacon Distributors, Inc.,* 441 F.2d 547 (1st Cir.1971), outlines the history of the doctrine as follows:

3. There is a distinction between a surety (primarily liable) and a guarantor (secondarily liable). "A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration.... On the other hand, the contract of guarantor is his separate undertaking, in which the principal does not join." Black's Law Dictionary (5th ed. 1979); *Valley Mining Co. v. Metro Bank,* 383 So.2d 158 (Ala.1980). However, there is no recognized surety-guaranty distinction in the application of the marshaling doctrine because these assets are not owned by a *common debtor of both creditors* (e.g. not contributed capital). *In re Harrold's Hatchery and Poultry Farms, Inc.,* 17 B.R. 712 (Bkrtcy.M.D.Ga.1982) (Guarantor); *In re Medical Research, Inc.,* 12 B.R. 941 (Bkrtcy.C.D., Ca.1981) (Guarantor); *In re A.E.I. Corp.,* 11 B.R. 97 (Bkrtcy.E.D.Pa. 1981) (Guarantor); *In re Beacon Distributors,* 441 F.2d 547 (1st Cir.1971) (Assumptor); 53 Am.Jur.2d *Marshaling Assets* § 23, (1970); 55 C.J.S. *Marshaling Assets and Securities* § 6 (*Necessity of Common Debtor*) (1948).

4. In Wisconsin when an officer, stockholder, or director mortgages, pledges, or otherwise secures a corporate debt, it is held to be a contribution to capital. In *Moser Paper Co. v. North Shore Paper Co.,* 83 Wis.2d 852, 266 N.W.2d 411 (1978), two officers and principal shareholders of a corporation granted mortgages on their individual residences to secure a corporate debt in order to get corporate working capital. The Court stated:

Although record title to the residences remained in the hands of Polka and Frey, in the eyes of equity the Polkas and the Freys had placed their residences <u>in the company till.</u> We hold that under the circumstances the mortgages created a fund which equity will consider a fund of North Shore itself. Under these circumstances, the marshaling of assets doctrine is appropriate. (Underlining for emphasis)

The only non-Wisconsin case recognizing the Wisconsin anomaly of contribution to capital is *Farmers & Merchants Bank v. Gibson,* 7 B.R. 437 (Bkrtcy.N.D.Fla.1980). See also *In re Multiple Services Industries, Inc.,* 18 B.R. 635 (Bkrtcy.E.D.Wis.1982). The better reasoning demonstrates that the doctrine of marshaling should not be so stretched.

... Derived from the case of *Culpepper v. Aston,* 2 Ch.Cas. 115, 117 (1682), the doctrine is almost the same today as it was then. *Compare Lanoy v. Duke of Athol,* 2 Atk. 444, 446 (Ch.1742), *with Meyer v. United States, supra.* An early case on all fours with the instant one is *Ex parte Kendall,* 17 Ves. 514 (Ch.1811). In that case a firm's senior partner died, and shortly thereafter the firm collapsed.

5. In the 8th Circuit, *In re Jack Green's Fashions for Men—Big and Tall, Inc.,* 597 F.2d 130, 20 CBC 432, 5 BCD 193 (8th Cir.1979); *In re Clary House, Inc.,* 11 B.R. 462 (Bkrtcy.W.D.Mo.1981), general *unsecured* creditors (in lieu of a junior or subordinate *secured* creditor) as represented by a trustee in bankruptcy, have been allowed (erroneously in the opinion of this court) to invoke the marshaling doctrine. This is contra to the overwhelming majority rule which requires a *secured* creditor. *Poole v. Tyler,* 94 U.S. 518, 24 L.Ed. 167 (1877); 53 Am.Jur.2d *Marshaling Assets* § 29 (1970); 55 C.J.S. *Marshaling Assets and Securities* § 17 (1978). The *Green's Fashion* case has been severely criticized in Labovitz, "Marshaling under the UCC: The State of Doctrine" 99 Banking Law Journal, 440, 446 (1982):

.... The bankruptcy court· is uniquely available as a forum wherein alert and imaginative trustees in bankruptcy might well seek to relegate secured parties to quixotic, lengthy, difficult, and exhaustive ventures into suits, attachments, foreclosures, and like undertakings against guarantors, or joint obligors, to seek recovery, prior to being able to satisfy its secured obligations, from a primary debtor's collateral. It is not inconceivable, based on *Green's,* that secured lenders which have taken guarantees and collateral in support of guarantees as "bonus" collateral, having relied primarily upon the basic corporate collateral for which the loans were granted, may find themselves in the unhappy posture of not having immediate availability to the prime collateral even though their security is otherwise unquestioned as having been properly perfected, and they are otherwise entitled to relief from automatic stay (Section 362). Such a result might well cause more significant pause in a commercial credit community, insofar as the granting of new credits is concerned, if the doctrine in *Green's* becomes persuasive, rather than remaining as an anomaly.

Allowing a Trustee in Bankruptcy to step into the shoes of a non-existent junior *secured* creditor stretches the doctrine too far. See *In re United Medical Research, Inc.,* 12 B.R. 941 (Bkrtcy.C.D.Cal.1981), which criticizes and rejects both *Jack Green's Fashions for Men, supra,* and *Farmer's & Merchants Bank v. Gibson, supra,* n. 5.

The question before the Lord Chancellor was whether he should stay the creditors' dividend on the four surviving partners "until payment shall have been recovered out of [the decedent's] estate by those creditors, who are creditors upon both funds." *Id.* at 418. The Chancellor ruled that the doctrine did not apply. American courts have followed this ruling consistently, from the earliest days, *e.g., Ayres v. Husted,* 15 Conn. 504, 516 (1843); *Dorr v. Shaw,* 4 Johns.Ch. 17, 20 (N.Y. 1819), to the latest, *In re Independent Truckers, Inc.,* 226 F.Supp. 440, Ohio App. 289, 194 N.E.2d 162 (1963).

### B. *Powers of Bankruptcy Court*

28 U.S.C. § 1481 provides: "A bankruptcy court shall have the powers of a court of <u>equity</u>, law and admiralty..." (Underlining for emphasis)

### C. *State or Federal Law*

■ The law of the state where the property is situated governs the validity, nature and effect of a lien on the property of a bankrupt. *Meyer v. United States,* 375 U.S. 233, 238, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963); *Porter v. Searle,* 228 F.2d 748 (10th Cir. 1955); *City of New Orleans v. Harrell,* 134 F.2d 399 (5th Cir.1943); *Wilson v. Duncan,* 61 F.2d 515 (5th Cir.1932); *In Re Victor Gruen Associates, Inc.,* 338 F.2d 826 (9th Cir.1964).

### D. *State (Alabama) Law*

The security interest in the instant case is governed by the Uniform Commercial Code. Ala.Code § 7-9-501 (1975) gives the senior secured party cumulative rights without requiring marshaling. The comment to § 7-

---

**6.** Clark, *supra,* (Cum.Supp.1982).

**7.** The doctrine of marshaling of assets will not be invoked where the senior creditor will be prejudiced or has an increased risk of loss. In *Victor Gruen Associates, Inc.,* 338 F.2d 826 (9th Cir.1964), junior mechanics lienor could not require marshaling where senior creditor could not fully be paid out of doubly-charged fund. In *S. Lotman & Son, Inc. v. Southeastern Financial Corporation,* 288 Ala. 547, 263 So.2d 499 (1972), a senior creditor held a third mort-

9-311 apparently recognizes marshaling as not being inconsistent with Article 9, so that § 7-9-103 incorporates the marshaling of assets' doctrine.[6]

The early case of *Nelson v. Dunn,* 15 Ala. 501, 517 (1849) adopted the doctrine of marshaling of assets in Alabama:

> It is furthermore, a well established rule in equity, that if a party has two funds, a person having an interest in one of them only, has a right in equity to compel the former to resort to the other, if it is necessary for the satisfaction of both.

This decision has been consistently followed. *Bryant v. Stephens,* 58 Ala. 636 (1877); *Turner v. Flinn,* 67 Ala. 529 (1880); *Henderson v. Alabama Gold Life Ins. Co.,* 72 Ala. 32 (1882); *Chandler v. Kyle,* 176 Ala. 184, 57 So. 475 (1912); *Vines v. Wilcutt,* 212 Ala. 150, 102 So. 29 (1924).

■ Further, in 1923 Alabama codified the doctrine of marshaling of assets by a specific marshaling of liens statute—Ala. Code § 35-11-4 (1975), as follows:

> § 35-11-4. Order of resort to different things.
>
> Where one has a lien upon different things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself,[7] or of injustice to other persons, must resort to the property in the following order, on the written demand of any party interested:
>
> (1) To the things upon which he has an exclusive lien;
>
> (2) To the things which are subject to the fewest subordinate liens;

gage on property purportedly worth $350,000 with a first and second mortgages of $235,000, marshaling denied because of risk of loss as would require senior creditor to buy in first and second mortgage after foreclosure of third mortgage. 53 Am.Jur.2d *Marshaling Assets* § 13 (*Necessity of absence of prejudice to senior creditor or other person*) (1970); 55 C.J.S. *Marshaling Assets and Securities* § 4 (*Equities of Paramount Creditor*) (1978).

(3) In like manner inversely to the number of subordinate liens upon the same thing; and

(4) When several things are within one of the following classes, and subject to the same number of liens, resort must be had

 a. To the things which have not been transferred since the prior lien was created;

 b. To the things which have been so transferred without a valuable consideration; and

 c. To the things which have been so transferred for a valuable consideration in the inverse order of the transfer. (Code 1923, § 8938; Code 1940, T. 22, § 4)[8]

See also *Mobley v. Brundidge Banking Co., Inc.,* 347 So.2d 1347 (Ala.1977).

## III. APPLICATION OF LAW TO FACTS

First Alabama Bank is the senior or paramount creditor with a security interest in inventory of $29,000.00 cost value and all accounts receivable ($13,352.54 so far collected), which are designated as Fund # 1—the singly-charged fund, which includes a specific accounts receivable from the State of Alabama Highway Department ($9,308.56 which has been collected).

Peoples Bank is the junior or subordinate creditor with a security interest in only one accounts receivable of the common debtor, The Computer Room, Inc., from the State of Alabama Highway Department of $9,308.56 (Fund # 2—the doubly-charged fund) to secure a loan of $6,807.90. Inasmuch as all three elements of the doctrine of marshaling of assets have been satisfied, Peoples Bank can properly invoke the doctrine so as to require FAB to collect from the inventory and other accounts receivable (Fund # 1—the singly-charged fund) rather than from the specific account receivable from the State of Alabama Highway De-partment (Fund # 2—the doubly-charged fund).

The Court rejects the 8th Circuit anomaly, *In re Jack Green's Fashion for Men—Big and Tall, Inc., supra*[9] as being inconsistent with the historical background of the doctrine of marshaling of assets and further, as stated in the *Matter of Samuels & Co., Inc.,* 526 F.2d 1238 (5th Cir.1976)

We do not sit as federal chancellors confecting ways to escape the state law of commercial transactions when that law produces a result not to our tastes. Doing what seems fair is heady stuff... Today's heady draught may give the majority a euphoric feeling, but it can produce tomorrow's hangover.

See *In re United Medical Research, Inc.,* 12 B.R. 941, 944 (Bkrtcy.C.D.Cal.1981). If the 8th Circuit rationale and the Wisconsin rationale were used in the instant case, the trustee in bankruptcy could force Peoples Bank to go against the personal guaranty of the principal stockholder, Jackson Mathews; but better reasoning supports the view that a separate guaranty of an officer, director, and principal stockholder is not a separate fund which the trustee in bankruptcy can force a senior creditor to exhaust.

This opinion stands as the Findings of Fact and Conclusions of Law in accordance with Rule 752 of the Federal Rules of Bankruptcy Procedure.

Judgment will issue in accordance with this opinion.

---

**8.** The Alabama statute is the same as California Code, § 2899, *Marshaling liens* (enacted 1872). California also has a marshaling *assets* statute, California Code, § 3433 (enacted 1872).

**9.** See discussion Note, supra, note 5.