[L. A. No. 4734. Department Two.—April 21, 1919.]

CITIZENS' SAVINGS BANK OF SAN DIEGO (a Corporation), Appellant, v. A. F. MACK et al., Respondents.

[1] PLEDGE—CORPORATION STOCK—FUTURE LOANS—NOTICE OF EQUITIES OF THIRD PERSON IN STOCK — FUTURE LOANS NOT PROTECTED.—A bank to whom corporation stock was pledged for money loaned and for such future loans as might be made, is not protected, as against the rights of a third person who had equities in the stock and of which the bank had knowledge, where the future loans were not the result of the compelling initial loan agreement or necessarily the result of the incidental contractual relations of the parties, it being optional with the bank to make any loans in excess of the original amount.

[2] ID.—PLEDGE OF STOCK AND EXECUTION OF MORTGAGES — SECURITY FOR PAYMENT OF LOAN — INTEREST OF THIRD PARTY IN STOCK — SATISFACTION—FIRST RESORT TO MORTGAGES.—Where a bank loaned money on a pledge of corporation stock and also took mortgages on real property as additional security, and a third person had equities in the stock, the bank was properly required, in view of sections 2899 and 3433 of the Civil Code, to foreclose its mortgages before resorting to a sale of the stock to satisfy the loan.

[3] ID.—MARSHALING OF ASSETS—LIEN ON TWO FUNDS—SATISFACTION OF DEBT.—Where a creditor has a lien upon two funds and another lien upon only one of them, he will be compelled to exhaust the fund upon which he has an exclusive lien and will be permitted to resort to the other for deficiency only.

APPEAL from a judgment of the Superior Court of San Diego County. W. A. Sloane, Judge. Affirmed.

The facts are stated in the opinion of the court.

Albert J. Lee for Appellant.

Doolittle & Morrison for Respondents.

LENNON, J.—The plaintiff by this action sought to restrain by injunction the defendant Bentley Ostrich Farm from canceling certain certificates of its corporate capital stock standing on its books in the name of the defendant Henry Eummelen, and to prohibit the corporation defendant from issuing to the defendant Mack other certificates in lieu thereof evidencing in the aggregate 280 shares of the corporate stock, and also to restrain the defendant Mack from receiving under claim of ownership or otherwise all or any portion of the said stock. The appeal, presented on the judgment-roll alone, is only from that particular portion of the judgment which in effect decreed that the plaintiff held the certificates of stock in controversy as a pledge to secure the payment of only twelve thousand dollars, instead of twenty-four thousand dollars, and provided that before a sale of 280 shares of said stock could be resorted to in satisfaction of the loan, which the trial court found were owned by the defendant Mack, the plaintiff must first foreclose the real property mortgage executed to plaintiff by defendant Eummelen simultaneously with the pledge of the stock as additional security for the loan of twenty-four thousand dollars, which was ultimately made by the plaintiff to the defendant Eummelen. In this behalf the portion of the judgment appealed from directed that the proceeds of the sale of the mortgaged property be applied first to the satisfaction of a second loan of twelve thousand dollars, and that then the plaintiff might have recourse to a sale of said stock in satisfaction of the unpaid balance, if any, of the twelve thousand dollars originally loaned to the defendant Eummelen, and secured by a pledge of the stock and a first mortgage on real property as well.

The facts of the case, as evidenced by the pleadings, proof and findings, are these: In November, 1911, W. H. Bentley was the owner and holder of 840 shares of the issued capital stock of the Bentley Ostrich Farm. In that month, the defendant Henry Eummelen represented to A. F. Mack, defendant and respondent herein, that a controlling interest in

said Ostrich Farm could be had for fifty thousand dollars. Thereupon an agreement was entered into by and between Mack and Eummelen whereby they were to jointly purchase the said 840 shares, each to advance one-half of the purchase price, and each in return to receive 420 shares of said stock Eummelen alone conducted the negotiations with Bentley, acting all the while for himself, and as agent of Mack. During the course of the negotiations, Eummelen informed Mack that he was unable to contribute twenty-five thousand dollars in cash as payment for his portion of the purchase price, and represented to Mack that Bentley was willing to take from Eummelen, in lieu of cash, his promissory note extending over a period of two years if Mack would pay fifteen thousand dollars in cash and give his promissory note for ten thousand dollars, and that if Mack would do this Bentley would convey to Mack in addition to the said 420 shares of stock certain real property situate in the city of San Diego, which was mortgaged for one thousand five hundred dollars and valued at three thousand dollars. Mack was willing and accordingly paid Bentley the sum of fifteen thousand dollars in cash and delivered his promissory note to Bentley in the sum of ten thousand dollars. Bentley in turn executed to Mack a deed to said real property. The representations made in the first instance by Eummelen to Mack that the purchase price of the stock was fifty thousand dollars were false, and willfully and knowingly made by Eummelen, who at all times knew that the price of the stock was but thirty thousand dollars, and in fact had, during the negotiations for the sale of the stock, agreed with Bentley, without Mack's knowledge, that the purchase price thereof was to be but thirty thousand dollars. A sale of the stock was consummated by Eummelen and Bentley at that price, but as a payment in full for his 420 shares he gave Bentley only a promissory note for five thousand dollars. In March, 1912, Mack discovered the fraud that had been thus perpetrated upon him, and on August 12, 1912, instituted an action, which sought and secured a judgment, entered on August 4, 1913, decreeing that he was the owner of such portion of the 840 shares of stock purchased as the sum that he had personally paid toward the purchase price of the stock bore to the amount actually paid therefor, namely, seven hundred shares, and that the defendant Eummelen held 28C

shares of said stock in trust for Mack.   On June 20th, the defendant Eummelen placed with the Citizens' Savings Bank of San Diego, the plaintiff in the present action, as a pledge to secure a loan of twelve thousand dollars, and such further sums as might thereafter be advanced, not to exceed the sum of twenty-four thousand dollars, stock certificates certifying that in the aggregate the defendant Eummelen was the owner of 420 shares of stock in the Bentley Ostrich Farm.   The stock so pledged, being the one-half of that purchased from Bentley for himself and Mack, was only part of the security placed for this loan, a real property mortgage also being executed to the bank by Eummelen on certain property owned by him.   On December 27, 1912, plaintiff advanced to Eummelen as a loan the further sum of three thousand dollars, and on February 6, 1913, the additional sum of nine thousand dollars, taking, however, as added security from Eummelen a second mortgage on the aforesaid real property which is situate in San Diego County.   On August 4, 1913, ten days after the entry of the judgment in the action instituted by Mack decreeing Eummelen a trustee of the 280 shares of the stock which had been pledged to the plaintiff by Eummelen, the plaintiff appeared and interposed in that action a motion to vacate and to set aside the judgment, to the end that it might be allowed to intervene. From the order denying the motion the plaintiff here appealed, but the order was affirmed.   (*Mack* v. *Eummelen,* 31 Cal. App. 506, [160 Pac. 1096].)

The principal point argued in support of the appeal is to the effect that the relative rights and obligations of the parties to the pledge of the stock were definitely determined by the initial loan agreement of June 20, 1912, and that, as a consequence, it was not only the plaintiff's right, but his unavoidable contractual obligation as well, to make further loans to the pledgor of the stock up to the limit of twenty-four thousand dollars, and that this was so despite the fact that prior to the making of the second and third loans of respectively three thousand dollars and nine thousand dollars plaintiff had, as the trial court found, actual notice of the fact that the defendant Mack had instituted an action for the recovery of 280 shares of the pledged stock upon the claim that he was the equitable owner thereof.   This contention is rested primarily upon the authority of Jones

on Pledges, section 106, where it is said: "A promissory note pledged before maturity as collateral security for future advances is good in the creditor's hands for all advances made before notice of equities between the original parties; but not for advances made after such notice—*unless the creditor at the time of taking the security bound himself to make advances to a definite amount.*" It will be noted that the last clause of the quoted section, italicized by us, is not supported by the citation of any authority, and that the cases cited by the author to support the preceding portions of the text have no relation to the principles enunciated in the last clause, which, in so far as our research shows, rests upon no authority save the *dictum* of the author. It is clearly contrary to the settled, fundamental, and familiar principles which measure the rights and obligations of *bona fide* pledgees. The general rule which provides protection for loans advanced upon the security of a pledge before, but not after, actual notice of the fact that third persons own or claim to own all or a portion of the subject matter of the pledge is doubtless subject to exceptions. The proper limitations to be placed upon the rule in exceptional cases, and which Jones probably had in mind but did not fully express in his work on Pledges, is to be found by analogy in his work on Chattel Mortgages, fifth edition, section 97. There he declares "that advances made by a mortgagee after he has actual notice that others have preferred rights in the property will be postponed to the rights acquired by such other persons unless the mortgagee be under a binding contract to make the advances, or it is essential to his own security to complete the advances contemplated by the mortgage. If he has the option to make the advances or not as he chooses, the mortgage as to each advance made upon it is to be regarded as a fresh mortgage." We apprehend that a "binding" contract is one under which the mortgagee was legally obligated to make the loan called for by the initial loan agreement, and for the breach of which he could be held liable. The case of *Preble* v. *Conger,* 66 Ill. 370, is an apt illustration of the application of the exception to the general rule which permits and protects future advances originally contemplated by the mortgage, even though made after notice of existing preferred rights of third parties. In this case the mortgagees had become the guarantors of the mortgagor to

third parties for the building of an hotel according to contract, and had taken a chattel mortgage from the contractor to indemnify them as a security for the payment of whatever sum might become due for advances and for payments made in discharge of the guaranty. In this situation, the court held that the mortgagees had the right to make on the strength of the mortgage such advances and payments, as well after notice as before, as were necessary for the discharge of their obligation.

[1] By a parity of reasoning, it might be readily and rightfully said that the second and third loans made by the plaintiff to the defendant Eummelen would have been protected by the pledge of the stock in question despite the plaintiff's knowledge of the equities of the defendant Mack if the loans had been the result of a compelling initial loan agreement or necessarily the result of the incidental contractual relations of the parties. But no such situation is shown either by the pleadings or by the proof. On the contrary, it was shown that it was optional with the plaintiff to make any loan in excess of the original twelve thousand dollars on the pledge of the stock. That this is so is evidenced, we think, by the fact that the plaintiff insisted upon having, and did receive, separate notes and a second real property mortgage as evidence of and security for the second and third loans.

The facts of the case at bar do not either directly or by analogy fall within the reasoning of *Thompson* v. *Toland,* 48 Cal. 99, and *Brittan* v. *Oakland Bank of Savings,* 124 Cal. 282, [71 Am. St. Rep. 58, 57 Pac. 84], and the general rule declared in section 2991 of the Civil Code. At no time was the stock placed by Mack in the hands of Eummelen so as to make him apparent owner thereof for the purpose of transfer.

[2] The further contention of the appellant that the trial court erred in adjudging that the plaintiff must first foreclose its mortgages before resorting to a sale of the pledged stock is not, we think, well taken. That requirement is within the purview of sections 2899 and 3433 of the Civil Code, and well within the principle enunciated in the case of *Kent* v. *Williams,* 114 Cal. 537, [46 Pac. 462]. [3] Moreover, it is in thorough accord with the well-established rule in equity that where a creditor has a lien upon two funds and another lien upon only one of them, he will be compelled to exhaust the fund upon which he has an exclusive lien and will be per-

mitted to resort to the other for deficiency only. (*United States* v. *Duncan*, 12 Ill. 523, [Fed. Cas. No. 15,003]; *United States* v. *Mott*, 1 Paine C. C. 188, [Fed. Cas. No. 15,826].)

The contention that the trial court erred in refusing to strike out portions of the defendant's answer was not argued and, apparently, is without merit.

Our conclusions upon the merits of plaintiff's appeal make it unnecessary for us to discuss and decide the points presented in support of the defendant's appeal from the same judgment which, by stipulation, comes here upon the same record.

The judgment appealed from is affirmed.

Wilbur, J., and Melvin, J., concurred.