[Civ. No. 4762.  First Appellate District, Division One.—February 13, 1924.]

GEORGE H. McCARTHY et al., Respondents, v. ARAKEL KURKJIAN et al., Defendants; J. M. URRUTIA, Appellant.

[1] Mortgages — Assumption of Indebtedness by Grantee — Additional Securities Held by Mortgagee—Subrogation.—Where an owner of real property executes a first mortgage thereon and, as further security for the payment of the mortgage debt, pledges to the mortgagee certain bonds, and thereafter sells and conveys said real property (but not the bonds) to another, who assumes and agrees to pay the full mortgage debt and signs the note given to the mortgagee, said grantee becomes the principal debtor, and his grantor the surety, and neither said grantee nor those claiming under him have any interest in the bonds pledged by said grantor, and they are not entitled to be subrogated to the rights of the mortgagee to said bonds by the payment of the mortgage indebtedness.

[2] Id.—Second Mortgage by Grantee—Marshaling of Assets.—Where said grantee of the real property (but not of the bonds), who agreed to pay in full the mortgage indebtedness created by his grantor, executed a second mortgage upon the real property as security for the payment of a prior indebtedness by him (but not of his grantor) to his mortgagee, the latter was not entitled to a marshaling of assets, and to have the bonds held by the original mortgagee first sold or applied on the first mortgage, before resorting to the real property upon which the second mortgagee had his mortgage.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Franklin A. Griffin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Goldman, Nye & Surr for Appellant.

B. S. Gregory and E. K. Taylor for Respondents.

Cullinan & Hickey for Respondent Rousseau.

2.  Marshaling assets for benefit of mortgagor, note, 47 L. R. A. (N. S.) 302.

SHORT, J., *pro tem.*—This is an appeal from a judgment of foreclosure of a first mortgage on certain real property situate in San Francisco. Judgment was entered decreeing foreclosure and sale of the said realty.

The appeal is from the judgment, by defendant J. M. Urrutia, a second mortgagee. Review is herein sought of said judgment and certain orders and rulings made by the trial court.

The following facts appear from the record: On January 15, 1921, A. F. Rousseau was the owner of the real property described in the complaint, known as the Kenilworth Apartments, located in San Francisco; and on that date leased the same to one Mrs. E. F. Gorman for five years at a rental of. $1,325 per month, and to secure said rental took a chattel mortgage covering her furniture. On January 18, 1921, defendant Rousseau mortgaged said realty for the sum of $100,000 to the Banco Popolare Fugazi, and as further security for the payment of this debt Rousseau pledged to the mortgagee certain Liberty and Victory bonds of the face value of $30,000, said mortgage being a first lien on said realty and bonds. The note secured by said mortgage contained the following clause: "This note is secured by a mortgage bearing even date herewith, and pledge of certain Liberty and Victory bonds."

On March 17, 1921, Rousseau sold the realty but not the bonds to J. B. Frinchaboy, and the said Frinchaboy, in the deed of conveyance, assumed and agreed to pay the mortgage debt, and signed the original note given to the bank. At the same time Rousseau assigned to Frinchaboy the lease and chattel mortgage securing the lease.

Frinchaboy immediately assigned said lease and chattel mortgage to Urrutia and also executed a second mortgage on the realty to Urrutia for the sum of $50,500 to secure an antecedent debt. On August 22, 1921, Frinchaboy conveyed his interest in the realty to the defendants Kurkjian. On May 4, 1922, Banca Popolare Fugazi assigned the first mortgage on the Kenilworth Apartments and bonds to George H. McCarthy and Mabel E. McCarthy, his wife. Later they hypothecated their interest in the note and mortgage to the Bank of Alameda for a loan of $67,500. On April 24, 1922, appellant brought suit to foreclose his second mortgage,

plaintiffs' first mortgage, the chattel mortgage of defendant Gorman, and for an accounting between himself and Frinchaboy.

On June 14, 1922, the plaintiffs commenced this action to foreclose the first mortgage.

The provision of the first mortgage relative to the liability of the bonds under this proceeding is as follows: "In the event that the mortgagor shall make default in any of the covenants of this mortgage, the mortgagee shall, however, have the option of foreclosing this mortgage upon the real property herein described, and, in the event of a deficiency shall be entered in its favor, after the sale of said real property by sheriff or commissioner, it may then sell said bonds in open market without notice to mortgagor and apply the proceeds towards the satisfaction of such deficiency judgment."

On January 30, 1923, Urrutia filed his bill to redeem in a separate action, numbered 133,193, in the same court.

[1] Appellant claims the right to pay the plaintiffs their debt and be subrogated to all the rights and securities under the first mortgage. Every proposal to pay being accompanied by the specific condition that the bonds should be applied thereupon; or in lieu thereof, if and provided said bonds be also delivered to this (appellant) defendant.

Relying upon the foregoing facts, the appellant contends that he was entitled to pay the first mortgage and thereby be subrogated to the security of realty and bonds, or be subrogated to have a marshaling of securities and have the bonds as well as the realty applied to the payment of the mortgage.

Respondents do not deny appellant's right to redeem by paying the mortgage, but contend that the payment thereof would give appellant no greater right to the security covered by it than Frinchaboy had, under whom he claims; that as Frinchaboy assumed and agreed to pay the debt of $100,000, when the real property was conveyed to him, and thereby, as between him and Rousseau, his grantor, he became the principal debtor and Rousseau became the surety (*Williams* v. *Naftzger*, 103 Cal. 438, 440 [37 Pac. 411]; *Fielding* v. *Iler*, 39 Cal. App. 559, 563 [179 Pac. 519]; *Beach* v. *Waite*, 21 Cal. App. 304–307 [131 Pac. 880]; *Braun* v. *Crewe*, 183 Cal. 728, 731 [192 Pac. 531]), That the real

property then became the primary fund for the payment of the debt; that Rousseau did not sell the bonds to Frinchaboy, but the realty only; that Urrutia, having received his mortgage from Frinchaboy and claiming under him, was entitled to no greater rights than he, Frinchaboy, possessed; that as Frinchaboy had agreed to pay the mortgage debt when he received title to the realty, a payment by Frinchaboy, who had assumed the entire mortgage debt, would completely extinguish the mortgage; and as Frinchaboy could not be subrogated to the right of the mortgagee and keep the mortgage alive for any purpose, neither could Urrutia, who claimed under and through him, and that Rousseau's property, the bonds, could not be taken to pay Frinchaboy's debt to Urrutia.

In support of their contention respondents cite a number of authorities, among which are the following: *Cook* v. *Kane et al.,* 101 Misc. Rep. 97 [166 N. Y. Supp. 453], and *Miller* v. *Fasler,* 42 Minn. 366 [44 N. W. 256].

In *Cook* v. *Kane, supra,* one Bridget C. Kane, who was the owner of a parcel of land, mortgaged it for the sum of $18,000, after which she conveyed it to one Matthew A. Kane, subject to that mortgage; thereafter Matthew A. Kane gave a second mortgage on the same land to one Herman Roth for $3,500. The first mortgage was foreclosed and a deficiency judgment entered; the second mortgagee, Ford, asked the court to charge the Bridget C. Kane estate with the payment of said deficiency and pay the money in the hands of the receiver to him, to apply upon his second mortgage, or to assign the deficiency judgment to him; the court denied the request and held "that when Matthew A. Kane took the property by deed from Bridget C. Kane, subject to the first mortgage of $18,000, Bridget C. Kane became entitled as against Matthew C. Kane and anyone claiming under him, as the defendant Roth, the second mortgagee, necessarily does in this case, to have the mortgaged property held primarily liable for the payment of the $18,000 mortgage."

In *Miller* v. *Fassler, supra,* one F——, the owner of three several blocks of land which were encumbered by a mortgage, conveyed one block to Mrs. Schurch, subject to the payment of the whole mortgage debt, which by the terms of the deed was assumed by the grantee, who also subse-

quently executed a second mortgage upon the block so con-
veyed. ''Held, that the effect of the stipulation in the deed
was to charge the block in question with the payment of
such prior mortgage, and the second mortgagee and his
assigns are affected with notice of such charge or encum-
brance upon the land mortgaged to them, and are bound
by it; and they can acquire no title to the other blocks,
under a redemption of the first mortgage from a sale upon
foreclosure which equity will permit them to assert against
the first named grantor F——.

''The effect of the stipulation in the deed . . . was to
make the land thereby conveyed (block 4) the primary and
exclusive fund for the payment of the mortgage as against
her, the grantee, and as to her grantees and mortgagees of
the same block, with notice, actual and constructive.

''That block thereby became charged with the payment
of the debt by her contract as effectually as if she had given
a new mortgage therefor upon it. And the plaintiff, as
holder of the second mortgage, was bound by the equities
appearing upon her title, as the same appeared of record.
. . . He could not, therefore, contrary to the stipulation in
the deed to his mortgagor, acquire or assert any rights to
blocks 2 and 3 under the prior mortgage, as against the
grantor in that deed, the defendant or his assigns.''

And the following principles are laid down in regard to
subsequent purchasers and successors in interest where the
debt has been assumed by their grantor.

In Pomeroy's Equity Jurisprudence, volume 3, fourth
edition, section 1206, page 2882, we find the following:

''As between the mortgagor and the grantee, the grantee
becomes the principal debtor primarily liable for the debt,
and the mortgagor becomes a surety, with all the conse-
quences flowing from the relation of suretyship. As between
these two and the mortgagee, although he may treat them
both as debtors and may enforce the liability against either,
still, after receiving notice of the assumption, he is bound
to recognize the condition of suretyship, and to respect the
rights of the surety in all of his subsequent dealings with
them. Payment, therefore, by a grantee who has assumed
the entire mortgage debt completely extinguishes the mort-
gage; he cannot be subrogated to the rights of the mort-

gagee, and keep the mortgage alive for any purpose.'' (See, also, sec. 1213, p. 2907.)

The above principles are approved in the following cases cited, to wit: *Lamoille County Sav. Bank & Trust Co.* v. *Belden,* 90 Vt. 535 [98 Atl. 1002]; *Northwestern Nat. Bank* v. *Stone et al.,* 97 Iowa, 193 [66 N. W. 91, 92]; *Irvine v. Perry,* 119 Cal. 352, 356 [51 Pac. 544, 949]; *Crenshaw* v. *Thackston,* 14 S. C. 437; *Haas* v. *Dudley et al.,* 34 Or. 355 [48 Pac. 168]; *Boice* v. *Coffeen,* 158 Iowa, 705 [138 N. W. 857].

From the foregoing authorities it appears that Frinchaboy is in the position of the principal debtor and Rousseau stood as his surety to the extent of the bonds, in which case neither Frinchaboy nor those claiming under him would have any interest in the bonds given as security by the surety; and it would be Frinchaboy's duty to protect the bonds, and those claiming under Frinchaboy would have notice of the liability. And as Frinchaboy was the principal debtor, a payment of the mortgage by him would extinguish it, so a payment by Urrutia, who claims under and through Frinchaboy, would not entitle him to be subrogated to the rights of the mortgagee, nor could it be kept alive for any purpose in his hands.

[2] The next contention of appellant is that he is entitled to a marshaling of assets, and have the bonds held by original mortgagee first sold or applied on the mortgage of $100,000 assumed by Frinchaboy, before resorting to the land upon which appellant has his second mortgage.

Replying to this, respondents claim that no marshaling of assets could be had in this case, since marshaling only occurs where both creditors who seek to marshal are creditors of the same person, and have demands against funds, the property of the same person; and that there was no privity of contract between appellant and respondent Rousseau and he not being a debtor of Urrutia one of the necessary elements of the marshaling of assets is wanting.

That before a court of equity will marshal securities be- tween two persons it must appear: First, that they are creditors of the same debtor; second, that there are two funds belonging to that debtor; third, that one of them alone has the right to resort to both funds. These principles are sustained by the following authorities: *Quinnipiac Brewing Co.* v. *Fitzgibbons,* 73 Conn. 191 [47 Atl. 128, 130]; *Robin-*

*son* v. *Lehman,* 72 Ala. 401, 404; *Stevens* v. *Church,* 41 Conn.
369; *Brooks* v. *Rice,* 56 Cal. 428; *Kent* v. *Williams,* 114 Cal.
537 [46 Pac. 462]; *Blair* v. *Ward,* 10 N. J. Eq. 125.

In *Savings Bank* v. *Middlekauff,* 113 Cal. 466 [45 Pac.
841], the court say regarding section 3433 of the Civil Code:
" . . . That section applies only to a case where one creditor
is entitled to resort to each of several funds of a debtor,
and another creditor of said debtor is entitled to resort to
some, but not all, the same funds."

Sections 2845 to 2850 of the Civil Code, cited by appellant,
refer to rights of sureties and do not apply to appellant
in this case.

It is clearly evident from the foregoing authorities that
appellant is not entitled to a marshaling of assets.

Having heretofore determined that the appellant is not
entitled to pay the first mortgage and thereby be subrogated
to the security of both the realty and the bonds, and having
further determined that said appellant is not entitled to a
marshaling of securities, it follows that the court did not
err in striking out the second defense in appellant's amended
answer; nor in denying appellant's motion to file an amend-
ment to the amended answer; nor in denyig appellant's
motion to file a cross-complaint; nor in  denying appellant's
motion for a continuance until such time as action No.
133,193 should be disposed of, as each and all of said matters
had reference to redemption and subrogation or marshaling
of securities.

The complaint stated a cause of action and was sufficiently
certain and unambiguous to apprise the appellant of the fact
that they were foreclosing the land only by said action.

The evidence is sufficient to support the findings and the
findings support the judgment.

The rents were applied as payments on the first mortgage
in accordance with the stipulation of July 12, 1922, except
the rent of the last three months, which was applied as pay-
ment on order of the court, and the amount found due was
reduced by the amount of said three months' rent, and it
does not appear that appellant has been injured by said
order.

The matter of attorneys' fees was within the discretion
of the trial court, who was familiar with the nature and
extent of the services performed, and he could fix such

an amount as in his judgment was reasonable and just, and we cannot say that there was an abuse of discretion.

Defendant Gorman not having appealed from the judgment we are of the opinion that appellant cannot question the correctness of the judgment against her.

From the foregoing conclusions it appears that there were no errors and that the judgment and orders should be affirmed, and it is so ordered.

Tyler, P. J., and St. Sure, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 13, 1924, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 10, 1924.

All the Justices concurred.