[Civ. No. 18643. Fourth Dist., Div. One. Jan. 7, 1980.]

BENJAMIN T. SHEDOUDY et al., Plaintiffs and Respondents, v. BEVERLY SURGICAL SUPPLY COMPANY et al., Defendants and Respondents;
FOOTHILL CAPITAL CORPORATION, Third Party Claimant and Appellant.

732

COUNSEL

Thompson, Sullivan, McGrath & McDonald, Donald McGrath II and Eric V. Benham for Third Party Claimant and Appellant.

Dorazio & Barnhorst, Dorazio, Barnhorst & Goldsmith, Howard J. Barnhorst II and Jan I. Goldsmith for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

## OPINION

**WIENER, J.—**■■ Marshalling is an equitable doctrine developed historically and traditionally used to prevent a junior lienholder with a security interest in a single property from being squeezed out by a senior lienholder with a security interest not only in that property, but in one or more additional properties. (See generally *Victor Gruen Associates, Inc.* v. *Glass* (9th Cir. 1964) 338 F.2d 826, 829-830; Civ. Code, §§ 2899, 3433; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 130, p. 5350.) The doctrine requires the senior lienholder to first resort to assets free of the junior lien to avoid the inequity which would otherwise result from the unnecessary elimination of the junior lienholder's security with the increased likelihood the junior creditor will be unable to satisfy its claim. We decide the equitable powers of the court are properly used to remove the security interest of a senior lienholder even in the absence of a pending foreclosure by that creditor where necessary to permit a judgment creditor as junior claimant to satisfy its judgment when in doing so, no risk of loss is imposed on the senior creditor.

### Factual and Procedural Background.

On May 11, 1977, judgment of $42,427.69 plus interest, and $8,000 attorney fees was entered in favor of plaintiffs against Beverly Surgical Supply Company (Beverly). Clark Hospital Supply Corporation (Clark) was added as a judgment debtor on January 28, 1978. No part of the judgment has been paid. The Sheriff of Los Angeles County, pursuant to a writ of execution issued on March 8, 1978, levied on Clark's account at the Century Bank and received $22,135.94. Before the sheriff paid the funds to plaintiffs, it was served by Foothill Capital Corporation's (Foothill) third party claim alleging the property under levy was subject to Foothill's security interest under valid security agreements with Clark and its related corporations. Two hearings were held on plaintiffs' motion for an order to declare the third party claim invalid in

reference to Clark's assets and to require a marshaling of assets of debtors other than Clark. The motion was granted. Foothill appeals.

### The Common Debtor Had Two Funds. The Necessary Elements of Marshaling Were Satisfied.

Marshaling is applied "[w]here a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons." (Civ. Code, § 3433; see also *Citizens' Sav. Bank* v. *Mack* (1919) 180 Cal. 246 [180 P.618].) It is never applied when the result would be inequitable. (*Harrington* v. *Taylor* (1917) 176 Cal. 802, 807 [169 P. 690].) "*The principle in some degree is, that it shall not depend upon the will of one creditor to disappoint another.*" (*Mack* v. *Shafer* (1901) 135 Cal. 113, 117 [67 P. 40].) The prerequisites to its application are (1) the two contesting parties are creditors of the same debtor, (2) there are two funds belonging to that debtor, and (3) one of them alone has the right to resort to both funds. (*McCarthy* v. *Kurkjian* (1924) 65 Cal.App. 569, 574 [224 P. 1016].)

Foothill concedes that both it and plaintiffs are common creditors of the same debtor, Clark, but argues that Clark has but a single fund (the bank account) subject to the senior lien of Foothill and the junior lien of plaintiffs. The court decided otherwise. It found the assets of Pacific Coast Medical Enterprises (PCME), Clark, Beverly and other subsidiaries were in excess of $33 million; the net worth was in excess of $10 million; and the assets of the parent and subsidiaries were used interchangeably. It also found Foothill's total claim was approximately $2 million. The court concluded that consistent with the equitable underpinnings of the doctrine of marshalling there were in reality two funds—the assets standing at any given time in the name of Clark and all the other assets in PCME and its subsidiaries available to Clark at any time dependent solely on what management of PCME decided.

We state the evidence in the light most favorable to the prevailing parties giving them the benefit of every reasonable inference and resolv-

ing conflicts in support of the order. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, pp. 4225-4226; § 245, pp. 4236-4238.)

Foothill is a finance company which extended approximately $2.7 million credit, including leased equipment, to PCME and its some 25 subsidiary corporations, including Beverly and Clark. The credit is secured by proper security agreements covering accounts receivable, equipment and inventory of the debtor corporations. Foothill's executive in charge of the loan account with PCME explained the relationship between each of the several corporations and Foothill's need for security against all the corporations. PCME and its subsidiaries are primarily engaged in the hospital and hospital supply business. Clark sells hospital supplies to four PCME hospitals; PCME's subsidiaries exchange money freely with one another on an "as needed" basis. On any given day it is impossible to determine which of PCME's subsidiaries has money, thereby requiring Foothill, for its protection, to secure its loan against the assets of the entire web of subsidiaries.

The use of funds among the corporations on an "as needed" basis for the benefit of PCME and to plaintiffs' frustration as the judgment creditor of a single corporation is reflected by the conduct of the corporations. Once plaintiff moved to add Clark as a judgment debtor on the grounds that it was the recipient of Beverly's assets, Clark promptly sold its real estate holdings and dissipated the proceeds of sale, approximately $400,000, through the web of 25 corporations.

Symmetry in the law is not always required. Clark's distinctness as a corporate entity to identify it as the common debtor does not require that its assets be merged with those of its related corporations to eliminate the existence of two funds. The evidence established that indeed there was another fund which, in equity, can be described as a second fund available to Clark on an "as needed" basis. To hold otherwise would effectively preclude plaintiffs from ever recovering on their judgment.

> *There Was Sufficient Evidence to Establish Marshalling Was Appropriate. It Did Not Create a Risk of Loss on the Senior Lienholder.*

Foothill also contends that marshalling is not proper because if applied a risk of loss is placed upon it. To support this argument, Foothill

refers to a declaration from one witness and testimony from another describing the problems in collecting approximately $6 million of receivables disputed by Medicare and Medi-Cal. It also points to the testimony of a bankruptcy expert on the substantially reduced value of assets including receivables and specialized equipment when sold at a forced sale. We note, however, there was testimony to the contrary and even after deducting for questionable accounts receivable and eliminating intangible assets the total secured assets were about $29 million. The net assets after these deductions were approximately $10 million. The books of the corporation and the 10-K report filed with the federal government reflected a shareholder's equity in the approximate sum of $10.6 million. In weighing the facts the court may well have given greater credence to the accounting data presented by PCME to its shareholders and filed with the government rather than accepting the gloomy predictions of value made by the third party claimant. There was substantial evidence to support the finding that the marshalling as ordered did not create a risk of loss to Foothill.

### *Marshalling of Assets May Be Ordered Even Where the Senior Lienholder Is Not Foreclosing.*

Relying on *In re Bank of Oakley* (1933) 131 Cal.App. 203 [21 P.2d 164], *Kent* v. *Williams* (1896) 114 Cal. 537 [46 P. 462] and *Citizens' Sav. Bank* v. *Mack, supra,* 180 Cal. 246, Foothill claims the marshalling order was improper because it was not foreclosing on its senior lien. It asserts that marshalling can only be used where the senior creditor forecloses on its lien thus threatening to wipe out the junior creditor.

The cases on which claimant relies were decided before the enactment of the California Uniform Commercial Code. California Uniform Commercial Code section 9311 (Stats. 1963, ch. 819, § 9311) provides: "The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer but a provision in the security agreement making the transfer constitute a default is valid." California Uniform Commercial Code comment 3 states: "Where the security interest is in inventory, difficult problems arise with reference to attachment and levy. Assume that a debt of $100,000 is secured by inventory worth twice that amount. If by attachment or levy certain units of the inventory are seized, the determination of the debtor's equi-

ty in the units seized is not a simple matter. The Section leaves the solution of this problem to the courts. *Procedures such as marshalling may be appropriate.*" (Italics added.)

The California Uniform Commercial Code does not contemplate nor require the senior creditor to first seek to foreclose its lien before the court may invoke marshalling as a method to resolve conflicting creditors' claims. Civil Code sections 2899 and 3433 also do not expressly require foreclosure by the senior lienholder before marshalling can be applied.

In light of the equitable principles involved a court need not indefinitely delay its actions to reach a just result between creditors until the senior lienholder elects to foreclose. If the power of the court were so limited, a judgment creditor might permanently and unjustifiably be deprived from satisfying its judgment. Moreover, each of the authorities cited by Foothill in support of its argument is inapposite. In *In re Bank of Oakley, supra,* 131 Cal.App. 203, 209, the court refused to order marshalling because of the prejudice to the senior creditor. Neither *Kent* v. *Williams, supra,* 114 Cal. 537, nor *Citizens' Sav. Bank* v. *Mack, supra,* 180 Cal. 246, hold that marshalling may *only* be ordered following a foreclosure by the senior lienholder.

■ *The Trial Court Did Not Put the Burden on the Senior Lienholder to Prove That It Would Be Prejudiced by the Marshalling Order.*

Foothill complains the court shifted to it the burden to prove a substantial threat of impairment to its security rather than requiring the plaintiffs to establish an absence of risk of loss if marshalling were ordered. This complaint in the abstract may be justified, but in the context of this case, is unwarranted.

After the first hearing, the court indicated plaintiffs' burden was satisfied, but in order to avoid problems in the future and to afford Foothill every opportunity to contradict or rebut the facts presented, continued the hearing for further evidence. Counsel for plaintiffs objected to the second hearing which he characterized as Foothill's opportunity for "a second bite at the apple." The court overruled the objection. Additional evidence was presented on the issue of the value of PCME and related subsidiaries and the adequacy of Foothill's security minus Clark's assets. Under these circumstances, instead of transferring

the burden of establishing nonrisk to Foothill, the court gave it a second chance to respond to its tentative findings. The court's concern with fairness did not result in a transfer of the burden of proof.

Order affirmed.[1]

Staniforth, Acting P. J., and Work, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 20, 1980.

---

[1]Foothill, without benefit of citation or authority, requests plaintiffs post bond as a condition to release of the subject funds. Presumably, the bond would continue indefinitely to insure Foothill against future loss arising from plaintiffs' actions. We decline to so order.

*Assigned by the Chairperson of the Judicial Council.