In re Carmelo John TERESI aka C.J. Teresi, aka Mel Teresi; and Pamela Sue Teresi, aka Pam Teresi, Debtors.

**WESTERN FARM CREDIT BANK, Movant.**

v.

Carmelo John TERESI aka C.J. Teresi, aka Mel Teresi; and Pamela Sue Teresi, aka Pam Teresi, Debtors.

**Bankruptcy No. 90–93258–11.
Motion No. M91–0309.**

United States Bankruptcy Court, E.D. California, Modesto Division.

Aug. 30, 1991.

■■■■■■

Gloria M. Green of Tennant, Read & Dutra, Sacramento, Cal., for Western Farm Credit Bank.

Brett Nesin, Stockton, Cal. and Ronald D. Roup, Lake Forest, Cal., for Associates.

## MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM AUTOMATIC STAY

JOSEPH W. HEDRICK, Jr., Bankruptcy Judge.

The court heard Western Farm Credit Bank's (the "Bank") motion for relief from the automatic stay on May 28, 1991. The Bank appeared by and through Gloria M. Green, Esq., of Tennant, Read & Dutra, Sacramento, California. Debtors appeared by and through Brett Nesin, Esq., Stockton, California. Associates Financial Services Company of California ("Associates") appeared by and through Ronald D. Roup, Esq., Lake Forest, California.

## BACKGROUND

The Bank seeks relief from stay pursuant to Bankruptcy Code section 362(d)(2) to collect amounts due on a single promissory note secured by two deeds of trust covering a vineyard and a duplex rental unit owned by debtors which the Bank alleges are devoid of debtor equity and not necessary for an effective reorganization.

All parties agreed that the fair market value of the duplex was correctly reflected in debtors' schedules at $135,000. Evidence at trial established the fair market value of the vineyard at between $185,000 and $210,000. Valued as of the date of the hearing, the following liens on the properties were established:

| Vineyard (value — $185,000 to $210,000) | | Duplex (value — $135,000) | |
|---|---|---|---|
| Bank | $218,081* | Glendale Fed. Bank | $ 27,818 |
| Associates | 104,602 | Bank | 218,081* |
| Tax Lien | 2,913 | | |

*The Bank's liens secure only one debt for the amount shown.

The Bank contends that the total value of both properties should be compared to the total secured debt on both properties in determining whether debtors have equity pursuant to section 362(d)(2)(A). Accordingly, the total $353,414 secured debt would be subtracted from the $320,000 to $345,000 combined fair market value of the properties resulting in a negative debtor equity. This negative equity determination relies on the assumption and condition that the Bank's debt would be allocated so that it would first be satisfied out of the duplex and then by the vineyard.

Consistent with and in support of the Bank's position, Associates has lodged a demand that the Bank's debt be marshaled pursuant to state law so that it *must* be satisfied first out of the duplex which would preserve substantial value for its second position consensual lien on the vineyard. In fact, Associates had, prior to the hearing, made a demand on the Bank to marshal which was agreed to in writing as part of the Bank's motion.

Debtors oppose the Bank's debt allocation as well as Associate's demand for marshaling. Debtors contend they are entitled to block Associate's marshaling demand and have implicitly demanded that the Bank's debt be marshaled so that it *must* first be satisfied out of the vineyard. Debtors' expressed intention is to sell the vineyard and apply the proceeds to satisfy the Bank's liens on both properties. In so doing, debtors assert they will not only eliminate the junior secured parties' interests in the vineyard but will also realize a substantial equity in the duplex—thus,

presenting an absolute defense to the Bank's section 362(d)(2) motion for relief from stay as to the duplex.

In further defense of the Bank's motion, debtors argue that the duplex is needed for reorganization. Debtors support this argument on the basis of the equity they will realize from their proposed sale of the vineyard along with the property's ability to produce unencumbered rents. Debtors, however, presented no evidence concerning a proposed reorganization plan nor how the duplex fit in it.

## DISCUSSION

Section 362(d)(2) provides that a court *shall* grant relief from the stay if:

    (A) the debtor does not have an equity in such property; and

    (B) such property is not necessary to an effective reorganization.

The party requesting relief has the burden to prove a debtor's lack of equity, and the debtor has the burden as to all other issues. 11 U.S.C. § 362(g).

Debtor Equity

"Equity" as used in section 362(d)(2) is judicially defined in the Ninth Circuit as the difference between the property value and the total amount of liens against it. *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir.1984). In this case, the parties dispute focuses on the amount of debt properly allocated to the Bank's liens on the respective properties and requires resolution of the mutual demands of Associates and debtors for application of the equitable doctrine of marshaling.

The scope and application of marshaling concerns the validity, nature, and effect of liens and must be examined under state law. *See In re T.H. Richards Processing Co.*, 910 F.2d 639, 643 (9th Cir. 1990); *Victor Gruen Assoc., Inc. v. Glass*, 338 F.2d 826, 829 (9th Cir.1964). In California, Civil Code sections 3433 and 2899 govern the mechanics of marshaling and provide as follows:

    RELATIVE RIGHTS OF DIFFERENT CREDITORS. Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons.

Cal.Civ.Code § 3433 (West 1970).

    ORDER OF RESORT TO DIFFERENT FUNDS. Where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in the following order, on the demand of any party interested:

    1. To the things upon which he has an exclusive lien;

    2. To the things which are subject to the fewest subordinate liens;

    3. In like manner inversely to the number of subordinate liens upon the same thing; and,

    4. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had—

    (1) To the things which have not been transferred since the prior lien was created;

    (2) To the things which have been so transferred without a valuable consideration; and,

    (3) To the things which have been so transferred for a valuable consideration in the inverse order of the transfer.

Cal.Civ.Code § 2899 (West 1974).

While normally requested and applied in the context of foreclosure actions, marshaling appears to be appropriate to allocate a senior lienholder's debt between two properties in any circumstance where necessary to protect and preserve junior lienholder's interests. California case law is clear that marshaling is not limited to the foreclosure context and may be applied whenever equi-

ty would require allocation of a senior creditor's debt between two or more properties to preserve or protect a junior lienholder's interests. *See, e.g., Shedoudy v. Beverly Surgical Supply Co.,* 100 Cal.App.3d 730, 733, 161 Cal.Rptr. 164, 166 (1980) ("We decide the equitable powers of the court are properly used to remove the security interest of a senior lienholder even in the absence of a pending foreclosure by that creditor where necessary to permit a judgment creditor as junior claimant to satisfy its judgment when in doing so, no risk of loss is imposed on the senior creditor."); *see generally* 16 Cal.Jur.3d, *Creditors' Rights and Remedies* §§ 20–23, at 50–52 (1983). The Ninth Circuit has also liberally construed the scope of California law on marshaling and has recognized its application in determining the extent of a junior lienholder's rights in property for the purpose of deciding standing to raise a due process claim. *In re Center Wholesale, Inc.,* 759 F.2d 1440 (9th Cir.1985). In addition, other federal courts have allowed marshaling to be applied in analogous circumstances such as where determination of the secured status of liens is at issue in section 506 actions. *See, e.g., In re Mihalko,* 87 B.R. 357, 363–64 (Bankr.E.D.Pa. 1988).

In this case, marshaling is arguably necessary to protect and preserve both Associate's and debtors' respective interests in this proceeding. This fact alone would appear to be sufficient under California law to invoke marshaling. Furthermore, the liberal application of marshaling by the Ninth Circuit and other federal courts convinces this court that marshaling is properly available to allocate a senior lienholder's debt between two or more properties for the purpose of determining equity in property pursuant to a section 362(d)(2) relief from stay motion.

The Ninth Circuit has established the rules under California law of a marshaling contest between a consensual junior lienholder and a debtor-in-possession in two related cases: *In re Center Wholesale, Inc.,* 759 F.2d 1440 (9th Cir.1985) ("*Center Wholesale I*"); and *In re Center Whole-*

*sale, Inc.,* 788 F.2d 541 (9th Cir.1986) ("*Center Wholesale II*"). The parties have urged that these cases are controlling to the marshaling contest presently before the court, but are in obvious disagreement as to what the cases compel.

In *Center Wholesale I,* the senior lienholder had a lien on all of the debtor-in-possession's pre-petition inventory. The junior lienholder had a subordinate lien on only a portion of the pre-petition inventory. The debtor-in-possession and the senior lienholder stipulated to and obtained a cash collateral order which permitted the debtor-in-possession to borrow funds from the senior lienholder in exchange for granting a senior lien on all of the debtor's pre- and post-petition inventory and which further permitted the debtor-in-possession to sell the encumbered inventory and apply the proceeds to reduce its debt to the senior lienholder. The junior lienholder received notice of the debtor-in-possession's motion for approval of the stipulation one day prior to the hearing and asserted that its due process rights had been violated and the judgment was void. Requisite to determining the junior lienholder's due process claim, the Ninth Circuit addressed the extent of the junior lienholder's property right in the portion of the inventory subject to its subordinate lien. The junior lienholder argued that in determining the extent of its property right it was entitled to a marshaling order which would require the senior lienholder to satisfy its lien first out of the inventory not encumbered by the junior lienholder's lien, thus preserving the junior lienholder's interest in its full amount. The debtor-in-possession objected contending that based on its power and capacity as a section 544 judicial lien creditor such an order would be contrary to state law because it would "do injustice to third persons" by squeezing out the statutorily-granted secured position of the estate in the otherwise unencumbered inventory. *Center Wholesale I,* 759 F.2d at 1446. The Ninth Circuit agreed with the debtor-in-possession and held that the debtor-in-possession could block any attempt by the junior lienholder to marshal the senior lienholder's debt. Reversing its prior holding

in *In re Forester*, 529 F.2d 310 (9th Cir. 1976) (which denied the same right to a trustee under the Bankruptcy Act in an alternate holding), the court concluded the recent opinion in *Shedoudy v. Beverly Surgical Supply Co.*, 100 Cal.App.3d 730, 161 Cal Rptr. 164 (1980), clarified California law by providing that a judgment creditor was among the class of persons entitled to a marshaling order and "implied that such a creditor is also entitled to block a marshaling order prejudicing his interest." *Center Wholesale I*, 759 F.2d at 1447.[1] Having determined that the debtor-in-possession could block the junior lienholder's attempt to marshal, the court held that for purposes of its due process claim the junior lienholder's property right was limited to the value of the inventory which was greater than the senior lienholder's pre-petition secured interest. *Center Wholesale I*, 759 F.2d at 1447.

In *Center Wholesale II*, the junior lienholder and the debtor-in-possession sought the Ninth Circuit's clarification of alleged ambiguities in its *Center Wholesale I* opinion regarding the marshaling rights of the parties. The debtor-in-possession's inventory had been reduced to cash and the extent of the junior lienholder's security interest was once again disputed. The debtor-in-possession interpreted the court's prior opinion as authority for the proposition that a trustee or debtor-in-possession may *require* a senior lienholder to satisfy its claim out of a junior lienholder's collateral. The junior lienholder opposed arguing that the issue was left open in the court's prior decision and that any suggestion that the debtor-in-possession could "reverse" marshal was dictum and not binding on the court. The Ninth Circuit rejected the debtor-in-possession's interpretation and emphasized their holding that a trustee or debtor-in-possession could block a marshaling order requested by a junior lienholder did not necessarily imbue a trustee or debtor-in-possession with the power to compel marshaling to the prejudice of some other "third person" with interests protected under state law (i.e., the junior lienholder). *Center Wholesale II*, 788 F.2d at 544. The court further held that where a trustee or debtor-in-possession's and a junior lienholder's power to marshal are held in mutu-

1. The Court questions the continuing viability of the Ninth Circuit's broad holding in *Center Wholesale I* that California law "implies" that a judgment creditor is entitled to block a marshaling order prejudicing its interest. The case relied on by the Ninth Circuit, *Shedoudy v. Beverly Surgical Supply Co.*, 100 Cal.App.3d 730, 161 Cal.Rptr. 164 (1984), did establish that a judgment creditor could demand marshaling, but did not discuss whether a judgment creditor could block a junior lienholder's attempt to marshal to its disadvantage. The Ninth Circuit apparently gleaned this additional legal kernel not from a state court decision but from the Ninth Circuit Bankruptcy Appellate Panel's opinion in *In re Spectra Prism Indus., Inc.*, 28 B.R. 397, 399–400 (9th Cir.BAP 1983) (Holding that *Shedoudy* clarified that a judgment creditor should be permitted to block a junior lienholder's marshaling order).

Through independent review of California law, this Court is of the opinion that the statutory prohibition of "injustice to third persons" does not depend exclusively on whether the "third person" would be entitled to require marshaling, but upon a balancing of the equities between the lienholders who may have marshaling rights and are attempting to marshal to the possible prejudice of each other. *See generally* 3 H. Miller & M. Starr, *Current Law of California Real Estate* § 8.171 (2d ed. 1989); Annota-

tion, *Doctrine of Marshaling Assets Where the Two Funds Covered by the Paramount Lien are Subject Respectively to Subordinate Liens in Favor of Different Creditors*, 76 A.L.R.3d 326 (1977). The Ninth Circuit has, in fact, previously recognized that a marshaling contest between two junior lienholders does not merely depend on whether there is a "right" to demand marshaling, but upon a balancing of equities. In the dissent to *In re Forester*, 529 F.2d 310 (9th Cir.1976), Judge Hufstedler (working under the now accepted premise that a trustee may demand marshaling) discussed that a marshaling contest between the trustee and a junior lienholder was dependent on their respective "equities" not just on whether they could, independently of each other, demand marshaling. *In re Forester*, 529 F.2d at 318–20.

In this case, the parties have not argued their respective equities under California law and have limited their factual and legal arguments to marshaling as developed and interpreted in the *Center Wholesale* cases. The Court is reluctant to go beyond the facts and arguments developed by the parties in deciding this case. The Court, therefore, reserves its decision on whether a balancing of equities between a junior lienholder and the interests under section 544 of a trustee or debtor-in-possession would compel a different result than derived in this case by following the *Center Wholesale* cases.

al check, the only available means to allocate a senior lienholder's debt between two or more sources was by choice of the senior lienholder. *Center Wholesale II,* 788 F.2d at 543.

■ Applying the Ninth Circuit's holdings in the *Center Wholesale* cases, the court determines that neither Associates nor debtors are entitled to have the Bank's debt allocated according to their respective demands. Rather, any allocation of the Bank's debt between the properties is left to the "choice" of the Bank. Here, the Bank has indisputably indicated in its motion that it has chosen to allocate its debt first to the duplex. Indeed, since the Bank's motion is pursuant to section 362(d)(2) and that section requires that the debtor have no equity in the property, the Bank's motion necessarily implies its choice to first allocate its debt to the duplex—if allocated first to the vineyard, its debt would be substantially satisfied leaving no debt to burden the lien on the duplex and the motion under section 362(d)(2) would be meritless as to the duplex. Furthermore, the Bank's motion contains a voluntary written acknowledgment and acceptance of Associate's written demand that it allocate its debt in such a manner. Accordingly, for the purposes of the Bank's section 362(d)(2) motion for relief from stay, its $218,081 of secured debt is allocated as shown below:

| Vineyard | | Duplex | |
|---|---|---|---|
| (value — $185,000 to $210,000) | | (value — $135,000) | |
| **Bank** | $110,899 | Glendale Fed. Bank | $ 27,818 |
| Associates | 104,602 | **Bank** | 107,182 |
| Tax Lien | 2,913 | | |
| | $218,414 | | $135,000 |

As made clear from the above table, the Bank's burden to demonstrate no debtor equity in either the vineyard or the duplex is met.

Necessary to an Effective Reorganization

■ Having determined that the Bank has met its burden of demonstrating lack of debtor equity, the court turns to the debtors' burden of showing the property is "necessary to an effective reorganization."

To establish property is necessary to an effective reorganization requires

not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Sav. Ass'n. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988) (quoting 5th Cir. opinion 808 F.2d 363, 370–71 nn. 12–13) (emphasis in original).

In this case, debtors have admitted that they do not plan to keep the vineyard as part of their reorganization efforts and seek only to retain the duplex. Debtors assert that the duplex is necessary for their reorganization based on the hope and assumption that sale of the vineyard will create a large equity in the property as well as based on the property's ability to produce rental income. Notwithstanding this assertion, debtors have failed to propose or suggest a reorganization plan, much less shown how the duplex is essential to it. By failing to present any evidence about what their reorganization plan is or when it could be proposed and brought to fruition, the court determines that debtors have failed to meet their burden of showing the "essential" connection between the property and a reasonably possible, successful reorganization in a reasonable time. *See In re Kurth Ranch,* 97 B.R. 33, 36 (Bankr.D.Mont.1989) (debtor

failed to satisfy burden under 362(g) to show property was necessary for effective reorganization because no reorganization plan had been proposed and no testimony was offered as to the contents of a prospective plan); *see also, In re Ashgrove Apartments of DeKalb County, Ltd.*, 121 B.R. 752, 756 (Bankr.S.D.Ohio 1990) (debtors with income-generating property, at a minimum, must show meaningful movement to propose a plan of reorganization and a realistic chance of plan confirmation).[2]

Debtors' insufficient showing is further undermined in that their assumption that the sale of the vineyard would create an equity in the duplex has been undone by the court's determination of the first issue in this case. While debtors would still have rental income, the Bank has asserted that these rents are subject to a perfected security interest. Even if debtors had a proposed reorganization plan which could meet the test of a "reasonable possibility of a successful reorganization within a reasonable time," debtors have further failed to demonstrate the extent of their ability and right to use these rents pursuant to applicable state and bankruptcy law.

### CONCLUSION

Based on the foregoing, the court determines that the Bank's motion should be granted as prayed. Counsel for the Bank is directed to prepare and serve on all parties proposed findings of fact and conclusions of law and a proposed order consistent with this decision. Copies of the same shall be lodged with the court with proof of such service. If no written objections are filed with the court on or before the later of eight days after service, the proposed findings of fact and conclusions

**2.** The court may have been more willing to forgive debtors' failure to show evidence of a reorganization plan had the Bank's motion and debtors' proposal come before the court earlier in the case. *See Timbers*, 484 U.S. at 377, 108 S.Ct. at 633 (less detailed showings required during four months that debtor is given exclusive right to put together a plan); *see also In re Ashgrove Apartments of DeKalb County, Ltd.*, 121 B.R. 752, 757 (Bankr.S.D.Ohio 1990); *cf. In*

of law and order may be signed, filed, and entered herein.

*re Missouri Flats Assoc.*, 86 B.R. 634, 638 (Bankr. E.D.Cal.1988). However, since the commencement of the case six months ago in November 1990, no apparent progress has been made toward proposing and confirming a plan. Given this time frame, the court is reluctant to continue to keep secured creditors at bay absent some showing by debtors that a successful reorganization plan is in the works and the property is essential to it.